————o————

## LEVI TILLOTSON v. WILLIAM L. WEBBER.

*Public lands—Grant to railroad—Selection—Evidence—Certification*
*of copy of public record—Deed—Identity of party—Practice*
*in Supreme Court—Ejectment—Taxes—Sale—*
*Validity of deed.*

1. The effect of the act of Congress of June 3, 1856, granting cer-
tain lands to the State of Michigan to aid in the construction
of a railroad from Amboy, *via* Hillsdale and Lansing, to some
point on or·near Traverse Bay, and of the acceptance of the
grant by the State, and of Act No. 126, Laws of 1857, grant-
ing said lands to the Amboy, Lansing & Traverse Bay Rail-

road Company, has been settled by this Court, so far, at least, as to determine that the title of the United States to the lands was divested, and that, when earned, the railroad company might select any land within the prescribed limit of 6 miles, if not 15 miles; citing *Johnson v. Ballou*, 28 Mich. 379.

2. The appointment by the Governor of the agent nominated by the railroad company to select its lands, the filing of the list of lands so selected with the Commissioner of the State Land Office, the certification of the same by the commissioner to the Secretary of the Interior, and the approval by that officer of such selection, are, in the absence of any proof to the contrary, *prima facie* evidence of the compliance by the railroad company with the statutory requirements to the satisfaction of the Federal and State governments.

3. The act did not expressly require the preservation or filing with the State or Federal departments of any selection or report of the agent appointed to select lands for the company, and the lands described in the list filed by the company with the State Land Commissioner, certified by him to be a true and correct list of the lands selected by the agent, and approved by the Secretary of the Interior, may be assumed to have been properly selected.

4. The certificate of the Commissioner of the General Land Office that an annexed paper is a copy of a list of lands on file in his office, so far as the same applies to certain descriptions. contained therein, makes the paper admissible in an action of ejectment involving the particular descriptions certified to, although not authenticated according to our statutes; citing *Lacey v. Davis*, 4 Mich. 150; *Gilman v. Riopelle*, 18 Id. 158.

5. By asserting title in himself under a tax deed, the grantee asserts that the United States has parted with its title to the land.

6. The fact of the identity of the name of the grantor in a deed under which a plaintiff in ejectment claims title with that of the grantee in a prior deed of the same land, no intervening conveyance being shown, raises a presumption of the identity of the grantor and grantee; citing *Goodell v. Hibbard*, 32 Mich. 47; *Eames v. McGregor*, 43 Id. 313.

7. An agreement between three persons, reciting the purchase by one of them of certain lands for the joint benefit of all, for a specified sum paid by the one, and providing that all money advanced by each shall bear interest, and that each shall receive pay for all services rendered and expenses incurred in the matter of the purchase and sale of the lands, and that the one

shall advance all moneys needed to pay all existing and future taxes thereon, and that whenever enough money shall have been received on sales made to repay the amounts advanced by the parties, with interest, the remaining lands shall be equally divided between them, creates only an equitable interest in the two, and, in the absence of proof of other right of possession in them, they are not proper co-plaintiffs with the one in an action of ejectment for the unsold land, which is wild and unoccupied.

8. Ejectment lies against one who pays for, procures, and causes to be recorded a tax deed, under which he claims title on the trial; citing *Anderson v. Courtright*, 47 Mich. 161; *Hoyt v. Southard*, 58 Id. 432; *Heinmiller v. Hatheway*, 60 Id. 391; *Murray v. Hudson*, 65 Id. 674.

9. The holding in *Demill v. Moffat*, 45 Mich. 410, and in other cases,[1] that the trial judge should clearly state the question of law upon which he directs a verdict, must be restricted to reasonable limits, and will not prevent the Court from examining the facts in the record in an ejectment suit in which the defendant claims title under a tax deed, issued on a sale of the land for the taxes of several years, and on the trial of which the circuit judge held the tax proceedings for each year void, but failed to specify his reasons for so holding as to one of said years.

10. If any portion of the taxes is void, a sale based thereon is void.

11. The power of the township board to raise money for the contingent and poor funds of the township depends upon the neglect or refusal of the electors to vote to raise the same at the annual township meeting, who cannot be held to have refused or neglected so to do if the proposition to raise the money was not submitted to them.

12. Where the amount charged against a parcel of land in the column headed "township tax" can be accounted for only by assuming that the general highway tax is included therein, contrary to law, a tax deed issued on the sale of the land to satisfy the taxes thus blended is void.

Error to Saginaw. (Edget, J.) Argued January 18, 1893. Decided June 16, 1893.

---

[1] See *Rayl v. Estate of Hammond*, 95 Mich. 22.

Ejectment.  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*L. T. Durand,* for appellant.

*G. W. Davis,* for plaintiff.

HOOKER, C. J.  The plaintiff brought an action of ejectment to try his title to certain wild and unoccupied lands.  He bases his claim to them upon a conveyance from the Amboy, Lansing & Traverse Bay Railroad Company to one Henry Day, while defendant claims title under an Auditor General's deed for delinquent taxes for the years 1874 to 1880, inclusive, excepting those for the year 1875.  A large number of assignments of error appear in the record, which can be conveniently considered upon the following questions:

1. Does plaintiff's record evidence show a valid conveyance from the federal government to Ashbel Green?

2. Is the identity of Ashbel Green aforesaid, as the grantor of plaintiff, established by competent evidence?

3. Had Rose and Stevens an interest which affected plaintiff's right of recovery?

4. Was defendant's connection with the land such as to subject him to an action of ejectment?

5. Questions involving the validity of defendant's tax deed.

*Plaintiff's title:* By act of June 3, 1856 (11 U. S. Stat. at Large, 21), Congress granted certain lands to the State of Michigan, to aid in the construction of the Amboy, Lansing & Traverse Bay Railroad.  The State accepted this grant, and in turn granted the lands to the railroad company, by Act No. 126, Laws of 1857.  The effect of this legislation has been settled by this Court, so far, at least, as to determine that the title of the United States was divested, and that, when earned, the railroad company might select any land within the prescribed limit of 6 miles, if not 15 miles. *Johnson v. Ballou,* 28 Mich. 379, 388.  The documentary proof in this case shows:

1. The acceptance required by section 5 of the act of 1857.

2. The filing of the maps required by section 6 of said act.

3. The certificates of the Governor that two sections, of 20 consecutive miles, of the road, were completed, whereby the company became entitled to select and sell 240 sections of land.

4. The appointment by the Governor of Amos Gould as agent to select lands for the company.

5. The selection of the lands in question by the company, on file in the Land Commissioner's office, at Lansing, over the signature of its president, with the confirmation of the board of control.

6. The filing of a list containing the lands in question, as selected, in the office of the Secretary of the Interior, with the approval of said secretary.

7. The conveyance by the railroad company of the lands in question to Henry Day.

It would seem that the appointment of the agent, and the certificates of the completion of the road, made by the Governor; the selection of the lands, and filing of the list, by the company, with the Commissioner of the State Land Office; the certification of the same by the State Land Commissioner to the Secretary of the Interior, and his approval,—ought to be sufficient proof that the railroad company had complied with the requirements of the law to the satisfaction of the State and Federal governments, if, indeed, it did not preclude their questioning the same.

It is true that objection was made to the introduction of the several documents by which plaintiff sought to prove these things, but we think them all admissible.

Objection is made that the selection of the land is not shown to have been made by the agent appointed by the Governor, as required by both the Federal and State acts. The latter provided for the nomination of the agent by the railroad company. No express provision required the preservation or filing with the State or Federal departments of any selection or report of the agent, and the list filed

with the Land Commissioner by the company, and approved by the Secretary of the Interior, may be assumed to have been properly selected, especially as it appears to have been acted upon; the Land Commissioner having certified to the list as a true and correct list of the lands selected by the agent of the State of Michigan, and the Secretary of the Interior having approved it as such.

Perhaps the most serious point raised relates to the authentication of the certified copy of the list of lands selected by the agent, and filed in the office of the Secretary of the Interior. The point to the objection seems to be that the certificate warrants the inference that the list of lands is not complete. It seems to be the practice of such department to certify a document so far as it applies to the particular property involved, and in this case the list included only the land in question here. To have certified the whole list would have made unnecessary expense, and incumbered the record with voluminous papers of no value. The same practice prevails in certifying field notes of surveys. See *Gilman v. Riopelle*, 18 Mich. 158; *Lacey v. Davis*, 4 Id. 150,—where it is held that authentication according to the practice of the department makes papers admissible, though not certified in accordance with our statutes.

Without deciding that these proceedings are necessarily conclusive against the Federal or State governments upon the question of the title of the railroad company, it is not too much to say that, in the absence of any proof to the contrary, they are *prima facie* evidence; and whether this title could be controverted by any one may be doubted (see *Jackson, Lansing & Saginaw R. R. Co. v. Davison*, 65 Mich. 438),—especially by persons not claiming title under some other grant from the government. Furthermore, when the defendant asserts title in himself, under his tax deed, he asserts that the government has parted with the land;

otherwise, it would not have been subject to taxation, and his tax deed would fall. If we accord to the tax deed all the weight as evidence that can be claimed for it, viz., that it is *prima facie* evidence that the lands were taxable, and, therefore, that the government had parted with its ownership, it does not militate against plaintiff's claim, while, if the proceedings showed that the lands were assessed in the name of the plaintiff, the plaintiff and defendant would be in the attitude of parties claiming under a common grantor, and under the well established rule it would be unnecessary to go behind plaintiff's title. *Eames v. McGregor*, 43 Mich. 313. And in the absence of such evidence of assessment to the plaintiff or his grantors, we are not called upon to assume that the taxes upon which defendant bases his claim arose upon an imaginary title emanating from the government, when a *prima facie* one is shown, which is consistent with defendant's alleged title. *Eaton v. North*, 20 Wis. 449. This view disposes of the many assignments of error which pertain to this branch of the case, for while there were other documents than those mentioned, offered to prove this title, and admitted against objection, they were unnecessary, and may be disregarded, inasmuch as the court might properly have said to the jury that Ashbel Green had title to the property.

*The identity of Ashbel Green:* In January, 1864, Henry Day conveyed the premises to "Ashbel Green, of New York." In 1884, "Ashbel Green, of the township of Palisades, in the county of Bergen, and state of New Jersey," conveyed the premises to the plaintiff. Plaintiff showed by one Rose that he knew Ashbel Green, who made this deed, and at one time he told him he lived in New Jersey. This evidence was clearly hearsay, and not admissible. But, in the absence of any testimony to the contrary, there was ample evidence to warrant the conclusion of the identity of the Ashbel Green who was the

grantee of Day, and him who was the grantor of the plaintiff. The proximity of the township of Palisades to the city of New York, and the well-known custom of residents of neighboring hamlets to do business in said city, together with the testimony upon the subject, were quite sufficient. See *Goodell v. Hibbard,* 32 Mich. 47; *Eames v. McGregor,* 43 Id. 313,—cited by counsel for plaintiff. The defendant was not injured by the testimony. This appears to have been the view entertained by the circuit judge.

*What was the interest of Rose and Stevens?* Defendant sought, on cross-examination, to draw out some evidence tending to show that two men, named, respectively, Rose and Stevens, had an interest in the land, upon the claim that this would affect plaintiff's right to recover. This appears to have been upon the theory that they should have been made parties plaintiff, or that it would limit plaintiff's recovery to an undivided interest, or possibly defeat it altogether, if Rose and Stevens were entitled to exclusive possession. He claimed to expect to show that one of them had charge of the land, or paid some taxes, under a contract which was produced, and which reads as follows:

"This agreement, made this twenty-ninth day of April, A. D. eighteen hundred and eighty-four, between Levi Tillotson, Jerome K. Stevens, and Julius K. Rose, all of the city and county of Saginaw, State of Michigan, witnesseth as follows:

"*Whereas,* the said Tillotson has this day purchased from Ashbel Green, of New York city, state of New York, for the joint benefit of said Tillotson, Stevens, and Rose, the following lands, viz. [here follow descriptions of various parcels in different counties], for the sum of four thousand dollars ($4,000), said money having been paid by said Tillotson:

"It is agreed between the parties hereto that all money advanced by each of them shall bear interest at the rate of seven (7) per cent. per annum, and also that each and every one of them shall be entitled to and receive pay for

all services and expenses in the matter of purchase and sale of said lands. Said Tillotson agrees that he will advance all moneys which may be needed to clear up and pay all taxes and assessments now or hereafter on said lands. Whenever enough of said land has been sold, and money enough received on the same, to repay the several parties hereto the amounts advanced by them, in money or otherwise, together with the interest on the same, then and at such time all the lands remaining unsold shall be divided equally between the parties hereto, share and share alike. This agreement is binding on the heirs of the parties hereto. All losses, if any, on said investment, are to be borne equally by the parties hereto.

"Signed and delivered this twenty-ninth day of April, eighteen hundred and eighty-four.

"In presence of—

"JEROME K. STEVENS.
"JULIUS K. ROSE.
"LEVI TILLOTSON."

We think that this contract did no more than to create an equitable interest in Rose and Stevens, and there was no offer to show any other right to possession, while it seemed to be conceded that the lands were wild and unoccupied. Under these circumstances the exclusion of the contract and testimony was proper.

*Was defendant's claim such as properly to subject him to an action?* In view of the zeal of defendant in defending his tax title, we think little hesitation should be shown in holding that it was. Repeated decisions have, however, set the question at rest. He admitted that he paid for, procured, and caused to be recorded, the tax deed under which he is here claiming title. *Anderson v. Courtright*, 47 Mich. 161; *Hoyt v. Southard*, 58 Id. 432; *Heinmiller v. Hatheway*, 60 Id. 391; *Murray v. Hudson*, 65 Id. 674.

This, in our opinion, disposes of all the questions involved, except those arising upon the tax deed.

The plaintiff claims that, if the record shows facts sufficient to invalidate the tax proceedings for each and every of these years, the deed must be held void, while the

defendant contends that this Court will only so hold upon grounds pointed out by the circuit judge. He asserts that no defect in the tax of 1876 was pointed out by the judge.

It is a convenience to this Court to have the questions of law upon which it must pass specifically pointed out by the trial court, as has been said in *Demill v. Moffat,* 45 Mich. 410, and other cases. But we understand that these cases go no further than to hold that the trial judge should clearly show the question of law that takes the case from the jury. This must be understood to be restricted to reasonable limits. In *Demill v. Moffat,* Mr. Justice COOLEY said:

" Was he [the trial judge] of opinion that the plaintiffs had given no evidence tending to the proof of their heir-ship? * * * Did he think adverse possession was satisfactorily made out? * * * Did he think the defendants had proved title out of Thorn through the alleged deed to Hamilton? * * * But we need not proceed from point to point in the case, and endeavor to surmise on what ground the plaintiffs were turned out of court. * * * In other words, we are invited to review this case upon all the facts."

In this case the court held that the tax proceedings for each year were void, and the judge was particular to give his reasons for so holding in regard to the tax for each year except 1876. This raises the legal question whether the facts in the record show the tax proceedings for the several years void; and it has frequently been held that the result of the case here cannot depend upon right reasons for his ruling having been given by the trial judge.

It is settled law that if any portion of the tax is void the sale based thereon is void. *Rogers v. White,* 68 Mich. 10; *Sinclair v. Learned,* 51 Id. 335; *Hall v. Kellogg,* 16 Id. 135. Tax titles for the years 1874, 1876, 1877, 1878, 1879, and 1880 are involved.

Included in the township tax for the year 1874 were the sums of $300 for contingent fund, and $200 for poor fund. The record shows that the voters voted a number of items at the annual township meeting, but these items do not appear to have been submitted to them, or in any way mentioned. Subsequently the township board voted them. This was unauthorized. The power of the board to raise money for these purposes depended upon the neglect or refusal of the voters to do so, and unless the proposition was submitted to them they cannot be said to have done either. *Harding v. Bader,* 75 Mich. 316; *Newaygo Co. Manfg. Co. v. Echtinaw,* 81 Id. 416.

The roll for the year 1876 shows excessive taxes to have been levied against one parcel of the land, amounting to nearly seven cents, and against the other amounting to nearly eight cents. Under repeated adjudications this is sufficient to render the deed invalid, so far as it is based upon the tax for that year.

The rolls for several years show large amounts charged against the land in the column headed "Township Tax." It can be accounted for only by assuming that the general highway tax is included. The law in force at that time provided that the annual township meeting might, upon the estimate of the highway commissioner, vote to raise a sum not exceeding one-half of 1 per cent. upon the aggregate valuation of the township, according to the assessment roll of the preceding year, for roads and bridges, the same to be levied and collected in the same manner as other township expenses. Comp. Laws 1871, § 1269. Again, section 477, subd. 15, provides that the board of supervisors may authorize a township, by a vote of the electors, to raise by tax a sum not exceeding $1,000 in any one year, to build or repair any roads or bridges in the township, or in the use of which the township may be

interested, to be "assessed and collected in the same manner as other township taxes are now assessed and collected by law."

Section 1002 provides for the delivery of the copy of the roll, with taxes carried out, with the school, library, two-mill, and schoolhouse taxes in one column, the highway taxes in another, the township taxes in another, etc., "and if other taxes are at any time required by law they shall be placed each in another column." This section applies to all taxes raised, and is sufficiently broad to cover all that may be raised. Its requirements are intended to afford tax-payers the means of ascertaining the purposes to which the taxes paid are to be applied, and such statutes are mandatory. *Case. v. Dean*, 16 Mich. 12. This statute distinguishes highway taxes from township taxes. Money raised under the first of these provisions has been held to be rightly included in the highway column (*Silsbee v. Stockle*, 44 Mich. 561), and that raised under the second would seem to be on the same footing. The blending of the township and highway taxes, even were it proved beyond the realm of conjecture, would be a violation of the law. To hold otherwise would, in view of the case of *Silsbee v. Stockle*, leave it optional with the supervisor to put these taxes in the highway or township column. This disposes of the tax titles for the years 1877, 1878, 1879, and 1880, and the deed must therefore be held to have conveyed no title to the defendant. It follows that the trial judge committed no error in directing a verdict for the plaintiff.

Judgment affirmed.

The other Justices concurred.