# CHARLESTON.

BERTIE SIZEMORE, *Adm'x. v.* NATIONAL CASUALTY COMPANY

(No. 6613)

Submitted February 4, 1930.   Decided February 11, 1930.

*Bailey & Shannon*, for plaintiff in error.
*E. W. Worrell*, for defendant in error.

Woods, Judge:

The widow of J. R. Sizemore, as administratrix of the latter's estate, instituted this action on an accident policy of insurance issued her husband during his lifetime by the National Casualty Company. The defendant in consideration of the payment of a premium of $1.00 insured Sizemore "against death or disability resulting directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means (subject to all limitations and conditions herein contained), for a term of twelve months." According to one of the subdivisions of the insuring clause, expressly limiting defendant's liability to certain travel accidents, it is agreed that, if the insured "by the wrecking of any private horse-drawn vehicle, or private motor-driven car or motorcycle, in or on which the insured is riding or driving, *or by being accidentally thrown from such vehicle or car*" should lose his life, it would pay $2,000.00.

The deceased, a deputy sheriff of Wyoming county, was, at the time of the injury, conveying a prisoner from Mullens to the county jail at Pineville. He was driving a Star touring car. The prisoner occupied the front seat with him, and John K. Lambert, the only witness to the accident, the rear seat. While the car was running twenty-five to thirty miles per hour the prisoner jumped to the ground, making his escape. The deceased, presumably in an attempt to prevent the escape, without checking the speed of the car materially, proceeded through the door, by which the prisoner had fled, to the running board, and from there "stepped off on the ground with his feet". In so doing he lost his footing and fell to the ground, sustaining a severe fracture at the base of the skull from which injury he died two days later. The road was slightly up grade at the point of the accident. The car, after decedent left it, continued forward until it collided with the rail of a cement bridge, forty to sixty feet distant. Defendant demurred to the evidence; and the court, on the conditional verdict, entered judgment for the defendant.

The only question before us is whether or not decedent's injury is within the terms of the policy.

Accident insurance policies are governed by the same principles as govern other contracts. The language employed in them is to receive a reasonable interpretation. The intent and substance, as derived from the language used, should be regarded. But, in a case where it can be fairly claimed that two constructions can be placed upon the language used in the policy, it is equally well settled that the one is to be adopted which is most favorable to the insured, and, in case of doubt as to the meaning of the terms employed by the company, they are to be construed most strongly against the insurer. Wood, Ins., sections 126, 129, 156, 159.

The words "accident", "accidental", and "accidentally" have never acquired any technical meaning in law, and, when used in an insurance contract, they are to be construed and considered according to the common speech and common usage of people generally. An accident is usually defined as an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected. 14 R. C. L. 1238. It is also generally held that an accident within accident insurance policies is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens. *Newsoms* v. *Casualty Ins. Co.,* 147 Va. 471. So, when injury or death follows or results from a voluntary act of the insured, and the act is one which is manifestly dangerous, and one which is not ordinarily done or performed without serious consequences to the doer, such result is not caused by accidental means. The insured, in order to recover in the instant case, must have been "accidentally thrown from such * * * car". Under a reasonable interpretation, this clause would undoubtedly cover cases where the insured was thrown from the car by reason of its having been brought to a sudden stop, or by a jar caused by one or more of the wheels striking a rock or rut in the road. And invoking the rule that the clause should be construed most strongly against the insurer, it would also include cases where a car was negligently or in-

tentionally started by a third person while the insured was entering or alighting therefrom, thereby throwing the latter to the ground.

When Sizemore attempted to alight without first stopping the car, he well knew that there was a possibility of losing his balance on reaching the ground, due to the speed he was traveling forward. His leaving the car was intentional. He knew the car was in motion. If he was in fact thrown by the forward movement of the car, a fact which is not established by the record, yet his voluntary act in stepping from the moving car robs it of its accidental nature. 14 R. C. L. 1238.

There was no evidence which would have authorized a jury in finding that the deceased was "accidentally thrown from the car" within the meaning of the policy. The judgment of the lower court is, accordingly, affirmed.

*Affirmed.*