TURNER v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION.

1. INSURANCE—ACCIDENT—BURDEN OF PROOF—PROXIMATE CAUSE.
    In beneficiaries' action on a health and accident insurance policy the burden of proving that the death of the insured resulted from purely accidental means rests on plaintiffs.

2. DEATH—ACCIDENT—PRESUMPTION.
    As a general rule death resulting from external and violent means gives rise to an inference or presumption that it was accidental.

3. INSURANCE—DEATH—PROXIMATE CAUSE—EVIDENCE—SUICIDE.
    In action on health and accident insurance policy, evidence *held*, to show that death resulted from head injury received when insured, a 19-year-old boy, jumped on slowly moving elevator

without suggestion of motive for suicide, evidence tending to show it, or permit of an inference of an intent to commit it or that death was due to heart failure, apoplexy or other natural causes.

4. Same—Construction of Policy—Accident.
   The term "accidental," as used in a health and accident insurance policy, is used in its ordinary and popular sense and means happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected.

5. Same—Construction of Policy—Accident—Proximate Cause.
   In determining whether or not fatal injury is covered by health and accident policy, if the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but if, in the act which precedes the injury, something unforeseen, unexpected or unusual occurs which produces the injury, then the injury has resulted through accidental means.

6. Same—Jumping on Elevator—Accident.
   Merely because insured, a 19-year-old boy, jumped 2½ feet down upon a slowly moving elevator and sustained a fatal head injury would not preclude finding that death was caused by accidental means.

7. Same—Contributory Negligence of Insured.
   Contributory negligence on the part of one insured *held*, no bar to recovery under health and accident insurance policy.

8. Same—Accident—Evidence—Questions for Jury.
   In action under health and accident insurance policy where evidence showing insured, a 19-year-old boy, jumped 2½ feet down onto a slowly moving elevator and sustained a fatal head injury as a result thereof and there is no indication of heart failure, apoplexy or death through other natural causes or intent to commit suicide, plaintiff *held*, to have sustained burden of showing death resulted through purely accidental means, hence case was properly submitted to jury on such issue.

9. Same—Application—False Statements—Materiality—Intent.
   Under provisions of insurance code regulating health and accident insurance the right to recover is not barred because of false statements in the application unless the statements were made with the actual intent to deceive or unless the statements materially affected either the acceptance of the risk or hazard assumed by the insurer (3 Comp. Laws 1929, § 12444).

10. APPEAL AND ERROR—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.

On appeal from denial of a motion for judgment for defendant notwithstanding verdict for plaintiffs, the testimony is construed most favorably to plaintiffs.

11. INSURANCE—APPLICATION—FALSE STATEMENTS—MATERIALITY—INTENT—QUESTIONS FOR JURY.

In action under health and accident insurance policy wherein insurer sought to have verdict directed in its favor because of false statements as to deformity of insured in application, signed by insured whose right arm and leg were noticeably smaller than the corresponding left members, evidence is construed most favorably to plaintiff, and, where it shows application blank was filled out by defendant's agent who could have easily observed the deformity and that insured signed the application without reading it or having it read to him, it will not be held as a matter of law that insured actually intended to deceive defendant or that the statements were materially false (3 Comp. Laws 1929, § 12444).

12. SAME—FALSE STATEMENTS IN APPLICATION—INTENT—EVIDENCE.

The conclusion that applicant intended to deceive the insurer does not necessarily follow from the fact that the application for health and accident policy contained statements which were false and was attached to, and made a part of, the policy, where it appears that applicant was 19 years old when policy was written, did not take the initiative in making the application and acted at the suggestion of the agent of defendant insurer (3 Comp. Laws 1929, § 12444).

13. SAME—INTENT TO DECEIVE—BURDEN OF PROOF.

Insurer has burden of showing that false answers in a material respect, contained in an application for health and accident insurance, were made with intent to deceive the insurer (3 Comp. Laws 1929, § 12444).

14. SAME—CONSTRUCTION OF STATUTES—INTENT.

The term "actual intent" as used in statute relating to the barring of recovery under health and accident policy because of false statements in application must be given its ordinary meaning when construing the statute (3 Comp. Laws 1929, § 12444).

15. EVIDENCE—INTENT.

The proper method for determining actual intent is by a consideration of the circumstances surrounding the transaction from which it is to be determined.

16. PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT IMPUTED TO PRIN-
CIPAL—INSURANCE.
Rule that the knowledge of an agent on a material matter, ac-
quired within the scope of the agency, is imputed to the
principal is applicable to a soliciting agent who is authorized
to obtain applications for health and accident insurance
(3 Comp. Laws 1929, § 12455).

17. INSURANCE—KNOWLEDGE OF SOLICITING AGENT—OBVIOUS DE-
FORMITY OF APPLICANT.
In beneficiary's action under health and accident insurance policy
the person who solicited the insurance is regarded as the agent
of the insurer and where fraud is not shown on part of insured
or agent and collusion between them is not claimed, the in-
surer is charged with knowledge of its agent as to applicant's
obvious deformity at the time agent prepared application for
signature by applicant (3 Comp. Laws 1929, § 12455).

18. TRIAL—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT—DI-
RECTED VERDICT—PLEADING—ADMISSIONS.
Claim that plaintiff, as a consequence of not denying averments
in supplemental answer filed by defendant, admitted allega-
tions therein comes too late when first raised on motion for
judgment notwithstanding the verdict, especially where the
additional matter in such motion could have been raised dur-
ing the trial, was treated as a question of fact by the defend-
ant during the trial, and a motion for directed verdict was
made without embracing such matter (3 Comp. Laws 1929,
§ 14531 et seq., as amended by Act No. 44, Pub. Acts 1939).

19. SAME—NEW MATTER IN ANSWER—DENIAL—JUDGMENT ON PLEAD-
INGS—EVIDENCE.
Where there is no reply to new matter set up in an answer as
constituting a defense and the cause is tried as if the new mat-
ter were denied by a reply, a demand for judgment on the
pleadings after each party has introduced its evidence comes
too late (3 Comp. Laws 1929, § 14531 et seq., as amended by
Act No. 44, Pub. Acts 1939).

20. SAME—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING VER-
DICT—EMPSON ACT.
Where decision on motion for directed verdict is reserved under
the Empson act and case is submitted to jury, the decision
of the trial judge is upon such motion and determination may
not be predicated upon additional grounds afforded by a mo-
tion for judgment notwithstanding the verdict since the proper
practice under such statute requires the trial judge to assign

his reason, or reasons, for granting the motion for a directed verdict and the opposite party need meet the motion only on the grounds therein relied on (3 Comp. Laws 1929, § 14531 *et seq.*, as amended by Act No. 44, Pub. Acts 1939).

21. SAME—DIRECTED VERDICT—QUESTION FOR JURY.

A verdict cannot properly be directed for one party when an issue of fact is presented for the jury's determination.

22. INSURANCE—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT —INCORRECT ANSWERS IN APPLICATION FOR HEALTH AND ACCIDENT POLICY—EVIDENCE.

Claims that alleged incorrect answers to questions in application for health and accident insurance affected the issuance of the policy and increased the insurer's hazard, raised for the first time on motion for judgment notwithstanding the verdict, *held*, not to entitle insurer to judgment in beneficiaries' action, where had such claims been advanced in support of insurer's motion for directed verdict, it would not have been entitled to judgment as a matter of law, as the matters, under the evidence presented, were questions of fact which plaintiffs were entitled to have determined by jury (3 Comp. Laws 1929, § 14531 *et seq.*, as amended by Act No. 44, Pub. Acts 1939).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 4, 1946. (Docket No. 7, Calendar No. 43,343.) Decided October 7, 1946.

Assumpsit by Raymond Turner and wife against Mutual Benefit Health & Accident Association on an insurance policy. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Mason, Stratton, Kent & Wise*, for plaintiff.

*Clifford M. Toohy* and *Frost & Ford*, for defendant.

CARR, J. This is an action on a health and accident insurance policy issued by defendant to Robert W. Turner under date of April 3, 1944. At that time the assured was 19 years of age and was resid-

ing with his parents who were the beneficiaries under the policy and are the plaintiffs herein. The policy provided for the payment of $1,250 for loss of life ''resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely accidental means (suicide, sane or insane is not covered).'' The application for the policy was taken by defendant's soliciting agent, Mrs. Ora Adams, who came to the home for the purpose of obtaining an application for a policy from plaintiff Raymond E. Turner. The record indicates that Mrs. Adams asked Robert certain questions contained in the application, and based the answers to other questions on her knowledge or observation. At the time, Robert was employed by the Sutherland Paper Company of Kalamazoo, Michigan, and Mrs. Adams was so informed. The application was signed by Robert, was forwarded to defendant company by its agent, and a copy was attached to the policy in question at the time it was delivered to the assured.

Robert continued to work for the paper company until October 14, 1944, at which time he suffered injuries resulting in his death. Thereafter defendant undertook to rescind the policy, claiming that information contained in the application as to the assured's physical condition was not correct. A check for the premiums paid was sent to the beneficiaries, acceptance thereof being refused. Such tender was renewed at the time of the trial.

At the conclusion of the proofs counsel for defendant moved for a directed verdict, claiming that plaintiffs had failed to sustain the burden of proof on the question whether death resulted from purely accidental means; and that the assured was, as a matter of law, bound to know the contents of the application, and that plaintiffs were precluded from

recovering because certain answers therein were not 'true. , Decision on the motion was reserved under the provisions of Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1929, § 14531 *et seq.* [Stat. Ann. § 27.1461 *et seq.*]), as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531 *et seq.* [Stat. Ann. 1946 Cum. Supp. § 27.1461 *et seq.*]), commonly referred to as the Empson act. The jury returned a verdict in favor of plaintiffs for the amount of the policy, together with interest. Thereafter defendant moved for judgment notwithstanding the verdict, relying on the reasons advanced in support of the motion for directed verdict, and also on certain additional grounds which will be referred to later. This motion was denied and defendant has appealed, asking that the judgment entered on the verdict be vacated and judgment for defendant ordered to be entered. The question presented is whether defendant was entitled to judgment as a matter of law for the reasons, or any of them, advanced by it.

The burden of proving that the death of the assured resulted from purely accidental means rested on plaintiffs. The testimony indicates that on the morning of October 14, 1944, Robert was at his place of employment, changed his clothes in the dressing room provided for that purpose, and then jumped from the floor where he was at the time, to a moving freight elevator that was descending and had passed the floor by approximately two and one-half feet. A witness described this elevator as being approximately 6 by 8 feet, with wood panels along the sides and with open ends. The operator of the elevator testified that he saw Robert jump down on the elevator, that his attention was then called to something else, and that he was not aware anything had happened to Robert until another employee called to him, whereupon he stopped the

elevator. He testified further that Robert made no
outcry of any kind. Another employee of the paper
company was on the main floor, saw Robert falling,
and saw him strike the concrete floor. In describing
the incident this witness said:

"Well, as near as I know it, I saw him coming
down through the air. I heard the noise first and
looking up I saw his body come tumbling out of
the shaft, over the tie bar, and he landed right at
my feet; I should judge probably about 2 or 3 feet
away from me, and one leg extended inside the
elevator shaft; and I hollered to the operator to
stop the elevator immediately, not knowing how bad
he was hurt, so that it wouldn't cut off his leg. It
was hanging on the inside; so I dragged him out of
the shaft, as soon as I had hold of him, and took
him immediately to the first aid room."

A physician who attended Robert testified, in
substance, that the assured had sustained a severe
head injury, which, in the opinion of the witness,
caused the death. He further testified that Robert
did not regain consciousness after he first attended
him. The testimony of the witness before referred
to who saw Robert strike the main floor indicated
that he was unconscious immediately following the
impact.

It further appears from the evidence that the ele-
vator was loaded with ice cream pails, with a space
between a foot and two feet on the ends and approxi-
mately one foot on the sides. The controls were on
the southwest corner of the elevator, and the load
interfered with the operator observing what hap-
pened to Robert. The testimony does not show the
rate of speed of the elevator, but it was described
by a witness as "slow moving."

The evidence rather clearly indicates that the
death of the assured resulted from the head injury
referred to by plaintiffs' medical witness. There is

no testimony suggesting a different theory. Neither is there any basis for an inference that the fall was due to heart failure or apoplexy, or other natural cause. As a general rule death resulting from external and violent means gives rise to an inference or presumption that it was accidental. 46 C. J. S. p. 428. *New York Life Ins. Co.* v. *Gamer,* 303 U. S. 161 (58 Sup. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218).

In support of its contention that plaintiffs did not sustain the burden of proof resting on them defendant cites and relies on *Dimmer* v. *Mutual Life Ins. Co. of New York,* 287 Mich. 168, and *Koycheff* v. *Mutual Benefit Health & Accident Assn.,* 305 Mich. 660. In both of these cases there was evidence tending to show that death was caused by suicide rather than by accidental means. In the case at bar, however, there is nothing to suggest that Robert Turner had any thought of taking his own life, or that he had any motive for doing so. Apparently, save for the physical defect hereinafter noted, he was a normal young man. Neither is there anything in the proofs, relating to the manner in which the injury was sustained, to justify an inference of an intent to commit suicide.

It is further claimed by defendant that because Robert voluntarily jumped down upon the elevator his subsequent injury and death cannot be said to have resulted from accidental means. Attention is called to the case of *Whitehead* v. *Railway Mail Assn.* (C. C. A.), 269 Fed. 25. There, however, the insured got off a moving railroad train while it was crossing a bridge over a creek. Recovery was denied on the ground that death resulting from such an act was not accidental, within the meaning of the insurance contract there involved. *Sizemore* v. *National Casualty Co.,* 108 W. Va. 550 (151 S. E. 841) is also cited. There the insured, who was a deputy sheriff,

jumped from an automobile going between 25 and
30 miles an hour, in an attempt to prevent a prisoner
from escaping. Under the terms of the policy, li-
ability based on a traffic accident of such character,
depended on the insured being "accidentally
thrown" from a vehicle. It was held that there
could be no recovery under the terms of the policy
involved.

In view of the claim advanced by defendant the
decision in *United States Mutual Accident Assn.*
v. *Barry,* 131 U. S. 100 (9 Sup. Ct. 755, 33 L. Ed.
60), is squarely in point. There the certificate is-
sued to the assured obligated the insurer to pay
to the beneficiary the sum of $5,000 if death of the
assured resulted from "bodily injuries effected
through external, violent and accidental means."
The testimony established that the assured volun-
tarily jumped from a platform, approximately four
feet in height, to the ground. A witness who was
in the company of the assured described it as a
"heavy jump," as though the assured struck the
ground on his heels. Internal injuries resulted,
causing the death of the assured several days later.
In sustaining a verdict of the jury in favor of the
beneficiary, it was said:

"It is further urged that there was no evidence
to support the verdict because no accident was
shown. We do not concur in this view. The two
companions of the deceased jumped from the same
platform, at the same time and place, and alighted
safely. It must be presumed not only that the de-
ceased intended to alight safely, but thought that
he would. The jury were, on all the evidence, at
liberty to say that it was an accident that he did
not. The court properly instructed them that the
jumping off the platform was the means by which
the injury, if any was sustained, was caused; that
the question was, whether there was anything acci-

dental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.''

This decision was cited with approval in *Ashley v. Agricultural Life Insurance Company of America*, 241 Mich. 441 (58 A. L. R. 1208). There the insured was lost while hunting and froze to death in a swamp. Commenting on the situation it was said:

"Insured's becoming lost was not by design, volition, or intent. It was not an expected or usual incident of hunting. It was unusual and unexpected, fortuitous. He became lost accidentally. 1 C. J. p. 390. His death was caused by accidental exposure to storm and frost. Freezing in and of itself is not an accident. *Sherman* v. *Flint Spring Water Ice Co.*, 229 Mich. 648. But if joined with a fortuitous, unusual, unexpected circumstance or event, it may constitute an accident. *Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich. 496. Deceased suffered an accidental death.''

Of like import are *Wheeler* v. *Title Guaranty & Casualty Company of America*, 265 Mich. 296, and *Hoff* v. *Mutual Life Insurance Company of New York*, 266 Mich. 380. See, also, *Taylor* v. *New York Life Ins. Co.*, 176 Minn. 171 (222 N. W. 912, 60 A. L. R. 959).

In the instant case it cannot be said that because the assured jumped down upon the elevator and thereafter sustained the fatal head injury, death was not caused by accidental means. It does not follow as a matter of law, that he intended or designed the ultimate consequences of his action. Contributory negligence on the part of the assured is not a bar to recovery on the policy. *Hunt* v. *United States Accident Assn.*, 146 Mich. 521 (7 L. R. A. [N. S.] 938, 117 Am. St. Rep. 655, 10 Ann. Cas. 449). The trial court properly submitted to the jury the question whether plaintiffs had sustained the burden of proof of showing that death resulted through purely accidental means; and it was for the jury to decide what inferences might fairly and reasonably be drawn from the evidence. It cannot be said that the proofs did not fairly support the finding indicated by the verdict. Defendant was not entitled to judgment on this ground.

Defendant further contends that false statements of a material character were made in the application for the policy, that it was entitled to rescind the contract on that basis, and was entitled to judgment in its favor as a matter of law. It is conceded by appellees that assured's right arm was smaller than his left arm and that such condition had existed from infancy. Apparently, however, the arm developed so that, at the time the policy was written, it was approximately three-fourths normal size, as indicated by the testimony of one of plaintiffs' witnesses. The proofs do not show the extent to which the usefulness of the arm was impaired. It further appears that the right leg of the assured was somewhat smaller than his left leg, and that he limped slightly in walking. No testimony was offered as to the extent to which the development of the leg was retarded.

It was plaintiffs' claim on the trial that Robert was not prevented from indulging in most normal activities common among young men of his age, that he played ball, ran, bowled, and rode a bicycle. As before noted, he was working at the time the policy was written and continued in the same employment until the time of his injury.

Among other questions in the application was, "Are you maimed or deformed? Answer as to each." To this question defendant's agent wrote the answer "No." Mrs. Adams was not a witness on the trial and it is undisputed that she did not read the question to Robert but simply wrote the answer after looking at him. Counsel for defendant concede in their brief that the agent should have noticed Robert's arm. No claim is made, however, that Mrs. Adams was actuated by any fraudulent intent to deceive defendant. Obviously, she had an opportunity to observe Robert's physical appearance and the testimony indicates that she did so. At the time he signed the application at her request Mrs. Adams could scarcely have failed to note the condition of his arm. It is contended, however, that the answer as written was untrue, and that because a copy of the application was attached to the policy when delivered to the assured, the latter was bound by the falsity, and intent on his part to deceive must, as a matter of law, be presumed.

In this connection the provisions of 3 Comp. Laws 1929, § 12444 (Stat. Ann. § 24.280), become material. Said section reads:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

The trial court submitted to the jury the question as to whether the answers in the application were false, and if so, whether they were made by the assured with intent to deceive. Special questions were not, however, submitted and it does not appear that any request therefor was made. Defendant does not allege error either in the charge of the court or in the admission of evidence. Rather it is claimed that defendant was entitled to judgment as a matter of law. With such claim we are unable to agree.

In the determination of defendant's motion it was the duty of the court to construe the testimony most favorably to plaintiffs. This rule has been repeatedly stated by this Court in prior decisions. Thus, in *Butzin* v. *Bonk*, 303 Mich. 522, in holding that the trial court properly denied defendant's motion for judgment notwithstanding the verdict, it was said:

"In disposing of defendants' motions and on this appeal the testimony must be construed most favorably to plaintiff. *Gayden* v. *Arabais*, 292 Mich. 651."

It was held that on the record issues were presented for the determination of the jury. See, also, *Kane* v. *Detroit Life Insurance Co.*, 214 Mich. 329.

In *Anderson* v. *Kearly*, 312 Mich. 566, in affirming a judgment for the plaintiff, the court quoted with approval from *Brown* v. *Arnold*, 303 Mich. 616, 623, as follows:

" 'The facts we have recited were established by the testimony, and we have repeatedly held that a jury may draw reasonable and legitimate inferences from established facts.' "

The court further commented:

"Having in mind that upon a motion to direct a verdict against plaintiff, the testimony and all

legitimate inferences which may be drawn from it most favorable to plaintiff must be accepted, we are of the opinion that plaintiff established a *prima facie* case.''

Under the evidence relating to the physical condition of the assured at the time the application for the policy was made the court would not have been justified in holding, as a matter of law, that the statements in question in such application were materially false, or that they were made with intent to deceive. *New York Life Insurance Co.* v. *Newman*, 311 Mich. 368; *Eastern District Piece Dye Works, Inc.*, v. *Travelers' Ins. Co.*, 234 N. Y. 441 (138 N. E. 401, 26 A. L. R. 1505); *Service Life Ins. Co. of Omaha* v. *McCullough*, 234 Iowa, 817 (13 N. W. [2d] 440, 153 A. L. R. 697); *Cotten* v. *Fidelity & Casualty Co:*, 41 Fed. 506; *Druhl* v. *Equitable Life Assurance Society*, 56 N. D. 517 (218 N. W. 220, 60 A. L. R. 962); *Commercial Casualty Ins. Co.* v. *Mathews*, 57 Ga. App. 446 (195 S. E. 887).

Assuming that the assured was charged with notice of what appeared in the application because of the fact that it was attached to and made a part of the policy, the conclusion does not necessarily follow that there was any intent on his part to deceive. The facts in the case are somewhat unusual. As before noted, assured was 19 years of age at the time the policy was written, had just finished high school, and there is nothing in the record to show that he had greater experience in business matters than the ordinary young man of that age. He did not take the initiative in making the application for the policy. The record indicates that he took such action at the suggestion of defendant's agent. Apparently he assumed that she understood the situation and that she was able to fill out the application properly. Had he read the applica-

tion at the time he signed it, or after receiving the policy, he might logically have concluded that the agent understood the interpretation placed by the company on the questions in the application and had written answers accordingly. The burden of showing that false answers in a material respect were made with an intent to deceive rested on the defendant. It will be noted in this connection that the statute uses the expression "actual intent." Such expression must be given its ordinary meaning. The proper method for determining actual intent is by a consideration of the circumstances surrounding the transaction. *Bentley* v. *Caille,* 289 Mich. 74; *Farrell* v. *Paulus,* 309 Mich. 441; *Brydges* v. *Emmendorfer,* 311 Mich. 274.

Claim is made that the trial court assumed that the knowledge of Mrs. Adams was imputed to defendant. It does not appear that in denying the motion for judgment notwithstanding the verdict the court made any specific finding in this regard. The general rule is that knowledge of an agent on a material matter, acquired within the scope of the agency, is imputed to the principal. 45 C. J. S. pp. 644, 646. This rule is applicable to a soliciting agent who is authorized to obtain applications. In *Serbinoff* v. *Wolverine Mutual Motor Insurance Co.,* 242 Mich. 394, it was said in discussing a situation of this character:

"It is conceded that Sparks was a soliciting agent for the Holden Agency at the time he secured the application for the insurance from Matey. His acts at that time 'will be held the acts of the company, and his knowledge the knowledge of the company.' *Russell* v. *Detroit Mutual Fire Ins. Co.,* 80 Mich. 407, 413. The defendant company is chargeable with full knowledge of any facts then known to him which might have influenced it in the issue of the

policy or affected the rights of the insured in its enforcement. *Steele* v. *German Ins. Co.*, 93 Mich. 81 (18 L. R. A. 85); *Blake* v. *Farmers Mutual Lightning Protected Fire Ins. Co.*, 194 Mich. 589; *Ames* v. *Auto Owners Ins. Co.*, 225 Mich. 44."

The provisions of Act No. 256, pt. 3, chap. 2, § 28, Pub. Acts. 1917 (3 Comp. Laws 1929, § 12455 [Stat. Ann. § 24.291]), are pertinent. Said section reads as follows:

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured."

See, also, *Van Houten* v. *Metropolitan Life Ins. Co.*, 110 Mich. 682; *Power* v. *Monitor Insurance Co.*, 121 Mich. 364; *Northern Assurance Co. of Michigan* v. *Kelly*, 217 Mich. 1; *Schaefer* v. *East & West Insurance Co.*, 260 Mich. 220.

Counsel for defendant have called attention to *Ruggirello* v. *Detroit Automobile Inter-Insurance Exchange*, 272 Mich. 44; *Ketcham* v. *American Mutual Accident Assn.*, 117 Mich. 521, and other decisions recognizing the rule that knowledge of the agent should not be imputed to the insurance company where actual fraud is indicated by the proofs, and particularly if collusion between the agent and the assured appears. In the case at bar, however, actual fraud on the part of either Mrs. Adams or Robert Turner was not shown. Clearly, there was no collusion between them and none is claimed. Neither, as before noted, is it urged specifically that Mrs. Adams was guilty of any fraudulent intent to deceive defendant. Under the facts here presented, defendant was charged with the knowledge its agent acquired at the time the application was prepared.

The motion for judgment notwithstanding the verdict alleged that defendant was entitled to judgment as a matter of law for the reasons covered by the motion for a directed verdict and for the further reasons, not raised by the prior motion, that the alleged false representations in the application materially affected the acceptance of the risk by the insurance company and, likewise, the hazard assumed by it. It was further alleged that plaintiffs admitted, by their failure to deny certain averments in the supplemental answer filed by defendant, that the policy would not have been issued if the answers in the application had been correct.

The answer to the declaration referred to certain questions in the application, alleged that they were falsely answered, and that in consequence plaintiffs were not entitled to recover. Among the questions so referred to the inquiry as to the existence of a deformity was not included. Plaintiffs filed a reply to the answer, denying that the policy was void for the reasons alleged by defendant. Subsequently, defendant filed a supplemental answer, referring specifically to the question as to deformity and the answer thereto, and averring that, had said question been answered correctly and truthfully, the policy would not have been issued, "because the risk would not have been commensurate with the amount of premium charged for such a policy." Plaintiffs did not file a reply to the supplemental answer. Defendant insists, in consequence, that the matters of fact alleged in the supplemental answer were admitted by plaintiffs.

On behalf of plaintiffs it is argued that the denials contained in the reply to the original answer to the declaration were sufficient in form and substance to cover the allegations in the supplemental answer. The motion for a directed verdict made no reference to the alleged admission, and it does not ap-

pear that it was in any way called to the attention of the trial court, except by defendant's supplement to its motion for judgment notwithstanding the verdict. Plaintiffs' contention is not without merit and finds support in .defendant's failure to raise the question on the trial. It is quite probable that had it been so raised plaintiffs would have sought and obtained leave to file a reply to the supplemental answer, thus obviating the question now sought to be raised on the pleading. In *Shoemaker* v. *Standard Oil Co.,* 135 Ohio St. 262 (20 N. E. [2d] 520), in commenting on a similar situation, the court said:

"In our judgment the situation is the same as in a case where there is no reply to the new matter set up in the answer as constituting a defense. When, in such a case, the cause is tried as if the new matter were denied by a reply, a demand for judgment on the pleadings after each party has introduced its evidence comes too late. *Lovell* v. *Wentworth,* 39 Ohio St. 614.

"The plaintiffs, having permitted the trial to proceed upon the theory that there was an issue of fact and having raised no question as to the defendant's answer until the evidence was in and the verdict returned, should not be permitted to prevail now in their contention. The objections of the plaintiffs to the form of answer did not come in time to be of any avail."

In the case at bar defendant not only failed to raise, on the trial, the question of the alleged admission, but offered testimony relating to the subject-matter of the alleged admission. Under the circumstances plaintiffs, and the trial court as well, were entitled to assume that defendant considered that the denials in the reply to the original answer to the declaration were sufficient to cover the averments in the supplemental answer. Without refer-

ence to the legal sufficiency of such denials we hold that defendant was not entitled to raise the question for the first time after the verdict of the jury had been returned.

Commenting on the claim that the alleged false answers in the application materially affected, as a matter of law, the acceptance of the risk, and the hazard assumed by defendant, the trial court said:

"This contention was not made, during the trial. The motion for a directed verdict did not embrace it. Defendant should not now be permitted the benefit of it. Without including this in the motion for a directed verdict, defendant recognized this question as one of fact by offering the testimony of its witness Wood, and in the second paragraph of its first request for an instruction. This question was properly submitted to the jury."

It is the position of counsel for defendant that under the provisions of the Empson act, above cited, a motion for judgment notwithstanding the verdict may properly include matters not covered by the motion for a directed verdict. The determination of the question raised rests primarily on the interpretation of the statute referred to, which reads in part:

"Hereafter in all civil actions at law, in courts of record, if the defendant at the close of the plaintiff's case or if either party shall at the close of the testimony, and before the case is submitted to the jury, request the court for a directed verdict in his favor, the court may reserve his decision thereon, and submit the case to the jury under proper instructions as to the law applicable to such case. After the case is thus submitted to the jury, or after receiving and recording the verdict of the jury and before judgment is entered in said case, the court may

hear arguments of counsel for and against said request, but in all such cases shall receive and record the verdict of the jury as rendered. If the court shall then decide as a matter of law, that the party requesting the directed verdict was entitled thereto, and if the verdict of the jury is adverse to the party making such request, the court shall enter its decision on the record and order judgment in accordance with such decision notwithstanding the verdict entered.''

This language clearly indicates that the legislature intended that the decision of the trial court, as to whether the party making the motion for a directed verdict is entitled to judgment as a matter of law, involves a decision of such motion. In other words, the statute does not contemplate passing on a subsequent motion made after the verdict of the jury is returned, presenting questions other than those raised by the motion for a directed verdict, or a determination based on such added grounds. If defendant's contention is correct the conclusion necessarily follows that a motion for judgment notwithstanding the verdict may be predicated wholly on grounds not covered by the motion for a directed verdict. However, it is the latter motion on which the court reserves his decision and it is that motion which the statute contemplates shall be decided if the verdict of the jury is against the moving party. It is fair to assume that if the legislature intended any such result as is involved in defendant's contention, such intent would have been clearly expressed. As indicated, the language of the statute is at variance with defendant's theory.

We are concerned in the case at bar solely with the procedure authorized by the Empson act. The previously established practice as recognized in *Plunkett* v. *Railway Co.,* 140 Mich. 299, is not in-

volved; nor is it intended to imply herein that such practice is in any way modified.

If in any case the trial court concludes that a motion for a directed verdict, made as contemplated by the Empson act, is well founded, proper practice requires that he assign his reason, or reasons, for granting such motion. *Parsille* v. *Brown,* 188 Mich. 485, 487. Likewise, the party claiming to be entitled to judgment as a matter of law should, at the time of making the request, state the grounds upon which he relies. Counsel for defendant recognized this duty in the instant case, and assigned specific reasons, in support of the request, on which they based their claim. The trial court, and the plaintiffs as well, had a right to assume that all the grounds relied on were stated. In opposing the motion plaintiffs were entitled to assert the right to meet the claims advanced in support of the motion by a further showing, if such was deemed necessary.

In *Smalley* v. *Railway Co.,* 34 Utah, 423, 442 (98 Pac. 311, 316), it was said:

"We think the reasons given by courts, requiring the grounds upon which a motion for nonsuit is based to be specified, in order that the court may know upon what question of law the case is asked to be taken from the jury, and the party against whom the motion is directed may be afforded opportunity to correct the defects, if they admit of correction, and can be obviated by additional evidence, apply with equal force to a motion for a direction of a verdict. If such opportunity should be afforded him on a motion of nonsuit, which, if granted, not being an adjudication on the merits, and not a bar to another action, for much stronger reasons should such opportunity be given him on a motion for a direction of a verdict, which, if granted, would be a bar to another action."

In reaching such conclusion the court cited with approval *Demill* v. *Moffat,* 45 Mich. 410; *Rayl* v. *Estate of Hammond,* 95 Mich. 22; *Tillotson* v. *Webber,* 96 Mich. 144; *Hanley* v. *Balch,* 106 Mich. 46; and *Tanderup* v. *Hansen,* 8 S. D. 375 (66 N. W. 1073).

In *Estate of Easton,* 118 Cal. App. 659 (5 Pac. [2d] 635), the court, in discussing a provision of the California code. somewhat analogous to the Empson act, said:

"Evidently, therefore, the main purpose of the statute in requiring such a motion to be made as a condition precedent to the exercise of the court's power to render judgment *non obstante veredicto* is to give the party against whom the motion is directed an opportunity to introduce whatever further and additional evidence he may have at hand to overcome the grounds of the motion."

See, also, *Estate of Caldwell,* 216 Cal. 694 (16 Pac. [2d] 139).

It does not appear that the precise question raised in the case at bar has heretofore been passed on squarely by this Court. However, the language used in the determination of cases involving the Empson act tends to support the conclusion of the trial court. Thus, in *Yacobian* v. *Vartanian,* 221 Mich. 25, it was said:

"The order for such judgment may be made upon a reserved decision of a motion to direct a verdict. The same considerations obtain as upon the decision of a motion to direct a verdict. The evidence must be viewed in the light most favorable to the party against whom the direction is sought."

Likewise, in *Davis* v. *Belmont Creamery Co.,* 281 Mich. 165, it was said:

"The judgment *non obstante veredicto* was based upon the court's decision on a reserved motion for

a directed verdict, and in determining said motion the same considerations are applicable as are pertinent to the determination of a motion for a directed verdict. A verdict cannot properly be directed for one party when an issue of fact, as in the instant case, is presented for the jury's determination."

See, also, *Fidelity & Deposit Co. of Maryland* v. *Verheyden,* 243 Mich. 544, *Vandenberg* v. *Kaat,* 252 Mich. 187; *Burt* v. *Railway Co.,* 262 Mich. 204; *Strausser* v. *Sovereign Camp of the Woodmen of the World,* 283 Mich. 370, and *Forman* v. *Prudential Insurance Company of America,* 310 Mich. 145.

For the reasons above stated we hold that the Empson act may not be construed as authorizing the inclusion in a motion for judgment notwithstanding the verdict of grounds not fairly covered by the motion for a directed verdict as presented prior to the submission of the case to the jury. Under the express terms of the statute it is the latter motion that counsel are permitted to argue and which the trial court is required to determine if the verdict is against the moving party. In the case at bar the trial court was correct in his interpretation of the statute.

Counsel on both sides have argued at some length in their briefs on the merits of defendant's claims that the alleged incorrect answers in the application affected the issuance of the policy and also increased the hazard of the insurer. On the record before us, we think that such claims presented questions of fact which plaintiffs were entitled to have determined by the jury. The inclusion thereof in a motion for a directed verdict would not have entitled defendant to judgment as a matter of law. The conclusions above stated with reference to defendant's claim, based on the assumption that representations materially false were contained in the application, that assured was bound thereby, that

the knowledge of defendant's agent was not imputable to it, and that the presumption of fraud involving actual intent to deceive necessarily followed, are equally applicable to the added claims in question. Defendant's introduction of testimony in an attempt to show that the policy would not have been issued had the questions in the application been correctly answered, and the requests to charge presented in its behalf, indicate that on the trial the issues referred to were regarded as questions of fact. The inferences to be drawn from the evidence were for the jury to determine.

Other matters raised on the record do not call for specific discussion. They are in substance covered by the determination of the questions above considered. The motion for judgment notwithstanding the verdict was properly denied. The judgment entered on the verdict is affirmed, with costs to plaintiffs.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.