## THOMAS v. TOWNSHIP OF BYRON.

1. TRIAL — CONDUCT OF ATTORNEY — PREJUDICIAL MISCONDUCT — EXAMINATION BY PHYSICIAN—PRIVILEGE.

   Persistent attempts by defendant's attorney to ask of a physician questions calling for information of a privileged nature, under repeated objection by plaintiff's attorney, and numerous adverse rulings of the court, for the sole purpose and with the obvious intent of prejudicing the jury, was reversible error.

2. EVIDENCE — PRIVILEGED INFORMATION — PHYSICIANS AND SURGEONS—ESTATES OF DECEDENTS—AUTOPSY.

   Testimony of a physician as to conditions discovered by him in an autopsy held against the consent of the patient's husband after he had acted as the attending physician of decedent in her lifetime, and had obtained privileged information, as a result of which situation he was enabled to make the examination after death, was improperly received over the objection of attorney for the husband, as administrator, in a personal injury action.

3. SAME — IMPEACHMENT — IMMATERIAL OR COLLATERAL ISSUE — HEARSAY—ADMISSIONS—EXECUTORS AND ADMINISTRATORS.

   Admissions of the administrator concerning the result of such autopsy and the cause of his wife's death, being hearsay, since he could not bind the estate, and because he could not be impeached on immaterial and collateral matters, were improperly admitted in evidence.

   168 MICH.—38.

Error to Kent; McDonald, J. Submitted November 22, 1911. (Docket No. 165.) Decided March 12, 1912.

Case by Charles R. Thomas as administrator of the estate of Alta Thomas, deceased, against the township of Byron, for the wrongful injury and death of decedent. Judgment for defendant. Plaintiff brings error. Reversed.

*Geo. E. & M. A. Nichols,* for appellant.

*Dunham & Phelps,* for appellee.

McALVAY, J. This action was brought by plaintiff, as administrator of the estate of his deceased wife, to recover damages arising from injuries which caused her death, which injuries were received by her while riding along a highway in said township, resulting from the negligence of defendant in not maintaining such highway in reasonable repair and in condition reasonably safe and fit for travel. The result of a trial was a verdict by the jury of no cause of action, upon which a judgment was entered. Plaintiff has removed the case to this court for review upon writ of error.

The errors assigned which are presented and discussed before this court by appellant which are necessary to be considered are: (*a*) Relative to the conduct of counsel for defendant in persistently repeating improper questions to the attending physician after they had been passed upon and excluded by the court. (*b*) Relative to the admission and rejection of evidence.

The facts, as claimed by plaintiff, are that on the 25th day of November, 1907, he was driving to Byron Center, in company with his wife, to do some trading, with a single horse and buggy along a highway in this township, which had been used for public travel for many years; that part of this road runs through a swamp and had been constructed as a corduroy of logs covered with earth, which at this time was about two feet in depth; that this part of the

road had been cut up by traffic over it earlier, leaving ruts and holes in the earth above the logs, one of which was of considerable size and quite deep. On the trip to town he avoided this hole, except with one wheel, by driving around it. On the return, when they came near where the hole was located, it was dark, and plaintiff, driving carefully at a walk, could not tell when he reached this hole because it was too dark. Suddenly the buggy plunged down and stopped, then started again, going over something which threw his wife forward over the wheel. He grabbed her, and drew her back into the buggy, stopping the horse as soon as he could within a few feet. He got out to ascertain if the buggy was broken. He lighted matches and looked into the hole. His wife became sick and vomited on the way home. When they arrived home she went to bed and complained of her side. There was a mark across her side about five inches long. He rubbed some liniment on which eased the pain. She continued to complain of this pain until her death, which occurred April 3, 1908.

A physician was called some time after the accident, who visited her almost daily, and sometimes twice a day, until the child was born on December 21st. On the day after the birth of the child she had a discharge of pus of very bad odor through the rectum, and later several similar discharges. She was feverish with chills, grew thin, and always complained of her side. There appeared a hard swelling on her side at the place of the injury, which softened after the discharges. Before the injury she had always been a healthy, vigorous person. She was up and around from time to time until the latter part of March, when she took to her bed and died April 3d. The undertaker testified that in preparing the body for burial he found a swelling on her side from which he removed two or three pints of pus.

On the part of the defense it was claimed that no such hole existed in this road at the time; that deceased was in an anæmic condition at the time of her claimed injury:

that her death was caused by pernicious anæmia, and not by the injury claimed.

The physician who was called to attend the deceased after the accident, and until the time of her death, was called as a witness by the defendant. He testified that he knew deceased and attended her during her last sickness. He stated the different times he so visited her, and that during that time he diagnosed her case and determined in his own mind what was the matter with her.

"*Q.* I will ask you what it was? (Objected to by plaintiff's counsel as incompetent.)

"*The Court:* The objection is sustained.   *   *   *

"*Q.* How did you examine her? (Same objection.)

"*The Court:* The objection is sustained.

"*Q.* What did you do by way of examination? (Same objection.)

"*The Court:* The same ruling.   *   *   *

"*Q.* What were you called there for?

"*Mr. Nichols* (Counsel for plaintiff): I submit that counsel ought not to persist in that line of interrogation, may it please your honor, knowing as he does just as well as the court, and all the rest of us, that it is wholly incompetent.

"*Mr. Phelps* (Counsel for defendant): Well, I have a perfect right to ask the question, and if you want to object, you have a right to.

"*Mr. Nichols:* It is objected to, that is sure.

"*The Court:* The objection is sustained.   *   *   *

"*Q.* Before this woman died, what did you diagnose her case to be?

"*Mr. Nichols:* That is objected to as being incompetent.

"*The Court:* The objection is sustained.   *   *   *

"*Q.* During the time you were attending Mrs. Thomas, and before her death, did you see her abdomen?

"*Mr. Nichols:* That is objected to as incompetent, irrelevant, and immaterial.

"*The Court:* The objection is sustained.

"*Mr. Phelps:* Well, now, if your honor please, I don't wish to insist, but I wish to follow that question. If he says he saw it, if he answers that he saw it, I wish to follow it by the question as to whether or not there was any swelling or any tumefaction. Now that question

would undoubtedly come under the statute if they are a mind to take advantage of it, and if they take advantage of it, we are entitled to the advantage that we may take of it before the jury.

" *Mr. Nichols:* I take an exception to that kind of a performance in court.

" *The Court:* I have ruled on it, and I have ruled the matter out, and you may proceed with the examination.

" *Mr. Phelps:* Well, our court bears me out.

"*The Court:* You have got your objection and your exception is taken.    Proceed.    (Exception by Mr. Phelps.)

"*Q.* I will ask you this question, Doctor:    During any of the times that you attended Mrs. Thomas from the 13th of December, before the birth of the child, down to the time of her death, did you ever discover any black and blue marks on her side, or any discoloration, or any tumefaction or anything here upon the left side to indicate that there was a pus sac inside?

"*Mr Nichols:* I object to that as incompetent and take an exception to counsel asking the question.    He knows better.

"*The Court:* The objection is sustained.

"*Mr. Phelps:* I have a right to ask the question.

"*Mr. Nichols:* You have no right to ask these questions.

"*The Court:* Go on, Mr. Phelps, proceed."

From the foregoing quotations from the record it appears from his own statements that counsel for defendant understood that the questions he repeatedly asked were not proper, and that, if objected to, would not be admitted, yet he continued persistently to repeat his questions, and the court was obliged many times to rule upon the same proposition.    The conduct of counsel cannot be approved, and his intimation that he had a right to continue repeating these questions during his pleasure indicates a deliberate intention to get before the jury incompetent testimony.    This court has repeatedly held that such conduct will not be tolerated.    In an early case this court in effect said that when, upon an offer of evidence, once a distinct ruling is obtained, other offers covered by such ruling must not be made.    *Scripps* v. *Reilly*, 38 Mich., at page

14. Later this case was followed, the court holding that counsel should not offer testimony in the presence of the jury which they know is incompetent. *Phillips* v. *Benevolent Society*, 120 Mich. 142 (79 N. W. 1). In a later case the court said:

"To the rulings of the court the attorney for the defendant seemed to pay no attention, as the following instance will illustrate: Upon the cross-examination of Mrs. Whitman the same question was repeated to her three times, notwithstanding the court each time ruled the question as incompetent, and the ruling was correct. The sole purpose of the question was to prejudice the jury. A severe reprimand, if nothing more severe, should have been administered." *Atherton* v. *Defreeze*, 129 Mich. 365 (88 N. W. 886).

This court has never departed from this rule. It is a general rule applicable in every case. It applies not only to privileged communications excluded by the statute in question, but to all testimony persistently offered after the trial court has squarely and clearly ruled upon it as inadmissible. The court in the *Scripps Case, supra,* has clearly and logically stated the principle upon which this rule is founded. In a case where a physician has been allowed to testify as to the communications privileged by the statute, Mr. Justice COOLEY, speaking for the court, said:

"This evidence ought not to be passed over without remark. It is surprising evidence for many reasons. One of these is that the physician had no business to give it. (The statute is cited and quoted). Every reputable physician must know of the existence of this statute; and he must know from its very terms, as well as from the obvious reasons underlying it, that it is not at his option to disclose professional secrets. A rule is prescribed which he is not to be 'allowed' to violate; a privilege is guarded which does not belong to him, but to his patient, and which continues indefinitely, and can be waived by no one but the patient himself." *Storrs* v. *Scougale*, 48 Mich. 387 (12 N. W. 502), and cases cited.

The conduct of counsel for defendant, as herein pre-

sented, amounted to prejudicial error committed upon the trial.

On his examination the plaintiff, administrator, testified that he was not present at any autopsy upon the body of deceased, and that he refused to give his consent to have Dr. Peppler (the attending physician) perform it. The doctor, who is the same one whose testimony defendant so persistently sought to get into the case under circumstances heretofore discussed in this opinion, performed the autopsy, and, while upon the stand as a witness for defendant, testified that plaintiff, before that time, had stated that deceased had received an injury in an accident, and he knew what plaintiff claimed before he made the autopsy, and stated plaintiff was not present at the time. He was then asked the following question:

"*Q.* Will you state, Doctor, what you found in your post mortem?

"*Mr. Nichols*: Objected to as incompetent, immaterial, and irrelevant.

"*The Court*: The objection is overruled. (To which ruling plaintiff duly excepted.)

"*Mr. Nichols*: As representing the estate, I submit that a post mortem under such conditions is incompetent and immaterial. (The objection was overruled, and plaintiff excepted.)"

This doctor then proceeded to give in minute detail what conditions he found as the result of the autopsy. A question as to what, before her death, he had diagnosed her case to be was excluded upon objection by plaintiff, but he was allowed to testify, over a like objection with an exception, what, when he had finished the autopsy, his conclusion was as to the cause of death of this woman.

Upon the part of the plaintiff it is contended that, on this record, where neither deceased nor the representative of her estate had waived the statutory privilege, it was error to permit the physician who attended her, from the time of her injury to her death, to testify to the results of an autopsy, and his conclusions therefrom as to the cause of her death. It is a question of first impression before

this court, and one upon which the authorities give no great assistance. There is no dispute but that the relation of physician and patient existed during the lifetime of plaintiff's decedent, or that all communications and knowledge which are within the inhibition of our statute received by this physician during her lifetime were privileged and so continue, there having been no waiver; but it is claimed that the death of the plaintiff's wife made this testimony competent. From the examination of this witness we conclude, by the questions asked, the answers to which were excluded as privileged, that he had during the lifetime of the patient made such an examination of her person, and received such information, as was necessary to diagnose her case and prescribe for her, and also that he had disclosed to defendant's attorney such facts. We must conclude from the record that on account of this relation, which existed between the witness and deceased, it was possible for him to proceed within a few hours after her death to hold an autopsy.

No case is cited by counsel, nor have we been able to find any, where the exact question here presented has been passed upon. Defendant relies upon the case of *Harrison* v. *Railway Co.*, 116 Cal. 156 (47 Pac. 1019), in support of the contention that the testimony of the doctor as to what the autopsy disclosed and his conclusions therefrom was competent and admissible. The headnote and part of the opinion in that case is misleading. The opinion states clearly that the relation of physician and patient never existed during the life of the deceased. Deceased was a passenger on a street car which collided with a brewer's truck, causing the injury. The doctor in the employ of the brewery came and examined the man for his employer. What the opinion states further has no bearing upon this question before us.

This statute without amendment has been in force in this State since the Revision of 1846. Its provisions are therefore a part of the fixed policy of the State. This court has given it a liberal construction in protecting the

privilege of the patient created by it.    To allow the testimony of this attending physician as to this autopsy, and his conclusions therefrom, would operate to take away such privilege clearly granted.    This testimony is improperly in the case.    Any other construction and determination is not in harmony with our construction of this statute and cannot be entertained.    It was error to admit it.

Error is alleged upon the ruling of the court, over objection, allowing cross-examination of plaintiff, administrator, concerning alleged statements made by him relative to an autopsy and the cause of his wife's death, and the liability of the township in relation thereto, and to make such cross-examination the basis for introducing impeaching testimony.    The court in his charge held that this testimony was immaterial upon the issue in the case, i. e., the liability of the municipality, but was admissible as bearing upon the credibility of the witness.    The witness could not bind the estate of his deceased wife by his admission, and the testimony relative to the autopsy was hearsay.    The rule is well settled that a witness cannot be impeached on collateral or immaterial matters.    The court was in error in admitting the testimony for that purpose.

Other errors claimed are of minor importance and do not require discussion, as there is no probability of a recurrence upon another trial.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial ordered.

STEERE, BROOKE, and STONE JJ., concurred.    BLAIR, J., concurred on the first and third grounds.