## CORA E. PALMER AND ANOTHER v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.[1]

November 10, 1932.

No. 28,977.

[1]Reported in 245 N. W. 146.

*Meighen, Knudson & Sturtz* and *Raymond N. Klass,* for appellants.

*H. L. & J. W. Schmitt, Charlotte Farrish, E. W. Dillon,* and *Alfred T. Vollum,* for respondent.

Loring, J.

This was a suit to recover the death benefits under an accident policy which excluded from its coverage cerebral hemorrhage and asphyxiation by carbon monoxide. The jury disagreed. The court granted defendant's motion for judgment notwithstanding the disagreement, and the plaintiffs have appealed from the judgment.

At the time of his death Arthur E. Palmer, the insured, was in apparent good health, 60 years of age, weighed over 200 pounds, and was slightly over six feet tall. He kept his car in a double garage, one stall of which he rented from one of his neighbors. On the day that he died he ate his dinner at his home, changed his clothes, and at 12:40 p. m. left for the garage to work on his car and prepare it for the winter. At two o'clock he was seen working on the car, but was not seen again until 3:40 p. m. when he was found lying on the floor of the garage face downwards at right angles to the car, the motor of which was running. Two windows of the garage were open, as was the ordinary door leading into his stall. The large doors which permitted the passage of the car were closed, and so were the doors leading into the other stall of the garage. There were some smoke and fumes pervading the garage, and Mrs. Palmer opened the large doors, shut off the motor of the car, and then discovered her husband lying in the position above referred to. He had bruises upon his forehead and nose; the color of his face and chest was a little deeper red than natural. There was some grease on the floor, but the record is silent as to any indication that the insured slipped on it. Two doctors were called who attempted to revive the insured, but failed.

The question presented to this court is whether the evidence is sufficient to go to a jury on the question whether or not the insured died by external, violent, and accidental means exclusive of inhalation of carbon monoxide gas, coverage for which was excepted by the terms of the policy. There is no indication of suicide. Other exceptions to the coverage were excluded. Two physicians testified for the plaintiffs that in their opinion, based upon hypothetical questions describing the conditions under which Palmer was found, he died from a concussion of the brain; that he did not die from carbon monoxide poisoning; and that death did not occur from cerebral hemorrhage or other excepted risks. Whether the evidence of these doctors withstood the test of cross-examination and is sufficient to make a case for the jury depends largely upon whether or not it is established by the evidence that the body of the insured presented that cherry-red appearance which is characteristic of carbon monoxide poisoning. The two doctors who, over objection, testified to the presence of this symptom were called to the garage at the request of Mrs. Palmer for the purpose of resuscitating the insured, and they worked upon him for about 40 minutes attempting to bring him to life by artificial respiration. Was the information which they obtained in this treatment of the insured and their opinions based thereon privileged under G. S. 1923 (2 Mason, 1927) § 9814(4), which provides in part:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity and which was necessary to enable him to act in that capacity."

The case is wholly unlike that of physicians called to perform an autopsy, because in such cases they are not there for the purpose of treating or ministering to the patient, but are there merely to determine the cause of death. Most of the cases hold that information obtained by physicians in performing autopsies is not privileged under the statutes. Some hold that it is. Thomas v. Township of Byron, 168 Mich. 593, 134 N. W. 1021, 38 L.R.A. (N.S.)

1186, Ann. Cas. 1913C, 686; Mathews v. Rex H. & A. Ins. Co. 86 Ind. App. 335, 157 N. E. 467. For a collection of the cases on this point see the note to Travelers Ins. Co. v. Bergeron (C. C. A.) 25 F. (2d) 680, 58 A. L. R. 1127, 1134. The insured was probably dead when the doctors began their treatment; but we surmise this because the treatment failed to resuscitate him. We do not know at what precise moment he passed away. Had he been revived, of course anything that these doctors learned in their treatment would have been privileged. The diligence of counsel on both sides has been unable to discover an authority on the precise question here involved. It is our opinion that the information obtained under circumstances such as these and the opinion based thereon where, in hope of reviving and resuscitating the patient, doctors examine him and give treatment, are privileged under the statute. They acquired this information in acting in a professional capacity for the purpose of enabling them to act in that capacity, not to determine the cause of death but to prevent death if possible. If the patient were still alive at the time they commenced the treatment but died during the process, we think that all would agree that the privilege covered the situation. How can it be any different when the doctors do not know whether the patient is beyond hope of revival? It would be an absurd result to say that the privilege depended upon the event rather than on the purpose of the physician. The legislature could not have intended such a construction. The fact that the result is unfortunate cannot have been intended to terminate the privilege as of the moment of death. The privilege, in so far as it relates to objective symptoms, would be largely nullified if a physician were compelled to tell what he saw the moment after death occurred. Neither do we think the privilege was waived by virtue of the defendant's constitution and by-laws in force when the insured joined the defendant organization. In our opinion G. S. 1923 (2 Mason, 1927) § 9814, nullifies any such waiver.

It is also contended by the defendant that the doctor's testimony as to the condition of the body was merely cumulative, and that the

coroner's testimony that the corpse showed the cherry-red symptoms characteristic of monoxide poisoning is conclusive. We do not so interpret his testimony. When inquiry was made of him in regard to the color, he was asked: "How compared with the natural and ordinary color?" Answer: "A little—a little red; a little more red tint." This falls far short of that conclusive establishment of a determinative symptom which would be required to upset the opinions of plaintiffs' experts. If it is not established that that symptom was present, then the opinions of plaintiffs' experts made a question for the jury. The coroner's testimony that the color of the blood was indicative of monoxide poisoning was far from conclusive. He was not shown to be qualified as an expert on such a point. Even if his opinion be given full weight, the doctors were not in accord as to its conclusiveness.

Inasmuch as the opinions of plaintiffs' doctors, in our view, justifiably support the theory that the insured died from concussion, the presumption follows, in the absence of proof, that the violence causing the concussion was the result of accidental means. Konschak v. Equitable L. A. Society, 186 Minn. 423, 243 N. W. 691.

The judgment is reversed.

STONE, J. (dissenting).

On the merits and even without the testimony of the doctors, the admission of which is held error, I think that judgment was properly directed for defendant.

Neither can I agree in all the implications of what Mr. Justice Loring says concerning the admissibility of the doctors' evidence. The purpose of the statute is to protect the disclosures of the living and not at all to make incompetent the appearance of the dead. It is in derogation of the common law, and therefore to be construed strictly rather than liberally. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8958. It is not to be extended by unnecessary implication, and I feel that this decision may lead to just that. It occurs to me that in every such case there is for the judge this preliminary fact question: Was the patient dead at the time of the observations concerning which the doctor is asked to testify?

A corpse cannot be a patient within the meaning of the statute. Travelers Ins. Co. v. Bergeron (C. C. A.) 25 F. (2d) 680, 58 A. L. R. 1127. So, if the determinative fact question is answered in the affirmative, the doctor should be permitted to testify concerning his post-mortem observations. Here it strikes me that any trial judge would have held on the evidence that the patient was dead at the determinative moment, thereby making the testimony admissible.

