BENDFORD *v.* NATIONAL LIFE & ACCIDENT
INSURANCE COMPANY.

1. INSURANCE—INDUSTRIAL LIFE POLICY—APPLICATION.

> Whether or not an application for an industrial life insurance
> policy is to be attached to the policy is optional with the
> insurer, hence, where not attached to the policy, a false state-
> ment thereby would not avoid the policy (CL 1948, § 522.4a).

2. SAME—INDUSTRIAL LIFE POLICY—NONATTACHED APPLICATION—
FRAUD—EVIDENCE.

> While an application for an industrial life insurance policy or
> the information therein contained, that was not attached to
> the policy, may not be used for the purpose of varying the
> terms of the policy by virtue of the clause contained in the
> policy that the policy constituted the entire agreement between
> parties, the nonattachment of the application would be no
> bar to its use for the purpose of showing fraud in the policy's
> procurement as such use does not amount to making it a part
> of the agreement nor to using it for the purpose contradicting
> the terms thereof (CL 1948, § 522.4a).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 29 Am Jur, Insurance §§ 169, 173.

> Noncompliance with statutory requirement that insurance policy
> contain entire contract, or that application be attached to, in-
> corporated in, indorsed upon, or delivered with, the policy as
> affecting right of insurer to show initial fraud or misrepresenta-
> tion by insured. 93 ALR 374.

[5] 29 Am Jur, Insurance § 526.

[6] 29 Am Jur, Insurance § 1470; 20 Am Jur, Evidence § 624 *et
seq.*

> Admissibility of statements by injured or diseased person to
> physician while latter is treating him. 67 ALR 10, 80 ALR 1527,
> 130 ALR 977.

[7] 29 Am Jur, Insurance § 1484.

[8] 29 Am Jur, Insurance §§ 166, 167.

[9] 29 Am Jur, Insurance § 557 *et seq.*

> Insurance: Incorrect statement of age. 1 ALR 459, 160 ALR 295.

[10, 11] 29 Am Jur, Insurance §§ 1440, 1441.

[12] 14 Am Jur, Costs § 11.

3. FRAUD—EVIDENCE—CONTRACTS.

One seeking to void an industrial life insurance policy for fraud is not limited, in proving such fraud, to the provisions of the agreement itself, as the fraudulent misrepresentations not contained in the agreement procured thereby does not add to the agreement in violation of the statutory or policy provision that the policy constitutes the entire agreement (CL 1948, § 522.4a).

4. INSURANCE—INDUSTRIAL LIFE POLICY—NONATTACHED APPLICATION —FRAUD—EVIDENCE.

An application for an industrial life insurance policy, not attached to the policy, which contained misrepresentations as to the previous health and hospital record of the applicant should have been admitted into evidence when proffered by the insurer in support of its defense of fraud in action for death of the insured slightly less than 2 years following application for, and issuance of, policy, notwithstanding statute and policy contained a provision that the policy contained the entire agreement between the parties (CL 1948, § 522.4a).

5. SAME—INDUSTRIAL LIFE POLICY—FRAUD—APPLICATION—INTENT— EVIDENCE.

A jury question was presented as to whether false answers in a material respect were made with actual intent to deceive, where they were contained in application for industrial life insurance policy, which had been signed by applicant who died less than 2 years thereafter and defendant's agent had inserted the answers.

6. EVIDENCE—PHYSICIANS—PRIVILEGED COMMUNICATION—TREATMENT —AUTOPSY.

The medical opinion and information derived by physician who had attended insured before his death and who performed autopsy upon insured's body was privileged and inadmissible in action by the beneficiary, notwithstanding she had consented to the autopsy.

7. SAME—ADMISSION AGAINST INTEREST—APPLICATION FOR OTHER LIFE INSURANCE.

It was error to exclude decedent insured's application for life insurance with another insurance company than defendant in latter's effort to show insurance had been procured from it by fraud, respecting his health, hospitalization and illness materially affecting the acceptance of the risk or hazard assumed, notwithstanding decedent was not a party to this suit and had made such an admission against interest.

8. Insurance — Industrial Life Policy — Instructions — Sound Health.

Instruction in action on industrial life insurance policy, after defining the term "sound health" made by the policy a condition precedent to its becoming effective, that the terms of such a policy are to be construed against the insurer tended to be confusing to jury and should not be given on new trial, as the term "sound health" should not be construed against or for the insurer.

9. Same—Industrial Life Policy—Instruction—Fraud—Misrepresentation as to Age.

Instruction in action on industrial life insurance policy that decedent's misrepresentation of his age was not evidence of fraud was error in that such misrepresentation was relevant to his acceptability as a risk.

10. Same—Industrial Life Policy—Instruction—Fraud—Cause of Death—Evidence as to Health.

Instruction in action on industrial life insurance policy that defendant insurer, claiming fraud, had to prove that insured, who died less than 2 years following application, had died of pleurisy with which he is shown to have been afflicted *held,* error, it being sufficient to show he had not been in sound health when the policy was issued.

11. Same—Industrial Life Policy—Fraud—Burden of Proof.

The burden rested on plaintiff to show that insured's condition, shown by insurer's proofs as to his hospitalization, surgery and draining chest wall, related to an ailment which did not tend seriously to weaken or undermine his health, it appearing he had died within 2 years of time he had applied for insurance.

12. Costs—Failure of Either Party to Prevail in Full.

No costs are allowed to either party on appeal, where neither has prevailed in full.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 8, 1959. (Docket No. 27, Calendar No. 47,538.) Decided April 13, 1959.

Action by Mildred Bendford against the National Life & Accident Insurance Company, a Tennessee corporation, for death benefits under industrial life insurance policy. Verdict and judgment for plaintiff in common pleas court. Circuit court reversed

and remanded for new trial. Defendant appeals, asking judgment and determination on certain questions of evidence. Plaintiff cross-appeals. Order remanding for new trial affirmed.

*Sol J. Schwartz* and *Richard B. Kramer,* for plaintiff.

*Fischer, Sprague, Franklin & Ford (Edward B. Harrison,* of counsel), for defendant.

DETHMERS, C. J.   In June, 1953, plaintiff's decedent signed a written application to defendant insurance company for a policy of industrial life insurance. The policy was issued June 29, 1953, naming his wife, plaintiff, beneficiary. He died May 26, 1955. Defendant declined to make payment under the policy and tendered all premiums paid on it. Plaintiff refused the tender and brought this suit in the common pleas court for the city of Detroit to recover the $1,000 face amount of the policy, plus interest.

Defendant raised 2 major defenses: (1) the policy had been procured by fraud in that decedent had made false and fraudulent misrepresentations as to facts in his application for the policy, and (2) decedent was not in sound health on the date of issue of the policy, which was an express condition precedent to its taking effect.

The application contained the following questions and answers:

"9. Is the proposed insured in good health, to the best of your knowledge? Yes."

"12. Has proposed insured had any illness, injury or accident in past 5 years? No."

"17. Has proposed insured ever had any illness or disorder of the brain, lungs, spine or nervous system or any disease not common to both sexes? No."

"20. Has proposed insured ever been confined to a hospital or sanitarium? No."

It is admitted that decedent signed the application but that the answers are the handwriting of defendant's agent. No copy was attached to the policy.

The proofs show that in 1949 decedent had been a patient in a hospital for 15 days and operated on for pleurisy. During the ensuing 6 years until his death the lung infection continued to drain intermittently through an opening in his chest. He had been hospitalized again for 31 days in 1951, also, according to indications in the record, because of the lung infection. The cause of his death, as disclosed by the death certificate, was septicemia due to chronic draining of the chest wall.

On trial defendant offered the application in evidence to show that the policy had been obtained by fraud. It was excluded on the ground that a copy had not been attached to the policy. Defendant also offered the testimony of a physician who had performed an autopsy on decedent's remains to show that decedent had not been in sound health when the policy was issued. This was excluded as privileged.

The jury returned a verdict for plaintiff. Defendant appealed to circuit court. That court upheld the trial court's above-mentioned exclusions of defendant's proffered evidence. It reversed and remanded for new trial, however, on other grounds. Defendant, on leave granted, appeals here on the above evidence-questions, urging that it is entitled to judgment as a matter of law but if this be denied and the order granting new trial be affirmed, then determination of those 2 questions should first be made here as a guide to the trial court. Plaintiff cross-appeals from the circuit court order for a new trial, challenging its findings of error in the

trial and asking that the judgment of the trial court on the jury verdict be affirmed.

Was the application inadmissible because a copy was not attached to the policy? Plaintiff relies on *New York Life Insurance Co.* v. *Hamburger,* 174 Mich 254, as holding so. Decision in that case was planted on PA 1907, No 187, § 1, subd 4 (3 How St2d, § 8312), which read:

"No policy of life insurance shall be issued in this State, unless the same shall contain the following provisions:   *   *   *

"Fourth, A provision that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to the policy when issued."

The policy involved in that case to which the Court applied that statutory provision was a general type of life insurance policy, not an industrial policy. The Court could not then have applied it to the latter because section 6 of that same act expressly provided:

"This act shall not apply to   *   *   *   industrial policies."

At that time there was no other statute applicable to industrial policies. A statute governing industrial policies came into being in Michigan for the first time in 1943 and continued in effect, unamended, during the entire period relevant to this case. PA 1943, No 81, pt 3, ch 2, §§ 4, 4a, 4b (CL 1948, §§ 522.4, 522.4a, 522.4b [Stat Ann 1943 Rev §§ 24.264, 24.264 (1), 24.264(2)]). The mentioned sections of said Act No 81 are the only sections in the act referring to industrial insurance. They do require that industrial policies contain the following provision:

"Sec. 4a. * * *

"Third, A provision that the policy shall constitute the entire contract between the parties, or, if a copy of the application is indorsed upon and attached to the policy when issued, a provision that the policy and the application therefor shall constitute the entire contract between the parties, and in the latter case a provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

This statutory language plainly leaves attachment of a copy of the application to the policy optional with the insurer. Neither this language nor any other in the mentioned sections governing industrial policies requires inclusion in them of a provision like that considered in the *Hamburger Case*. Such provision is required under the fourth subdivision of section 3 of said Act No 81 (re-enactment of the provision considered in the *Hamburger Case*) with respect to life insurance policies generally, but said section 3 states that its provisions and requirements apply to "life insurance other than industrial life insurance," thus expressly exempting industrial policies from the requirement that the application must be attached to the policy in order to permit a false statement contained therein to avoid the policy.

We have noted that the statutory provision for attachment of a copy of the application to the policy, applicable to life insurance policies generally, was not extended by the legislature to industrial policies. It is to be noted, further, that this Court has declined to extend it by implication to other types of insurance than those specifically included by express statutory terms or to situations not included within the statutory language. See *General American Life Insurance Co.* v. *Wojciechowski,* 314 Mich 275, and cases therein cited involving group insurance policies, and *New York Life Insurance Co.* v. *Buchberg,*

249 Mich 317 (67 ALR 1483), involving an application, not for issuance of a new insurance policy but for reinstatement of an old one.

In compliance with the third subdivision of section 4a of Act No 81, the policy before us did provide that "this policy constitutes the entire agreement between parties hereto." This would preclude use of the application or information therein contained, while not attached to and made a part of the policy, for the purpose of varying the terms of the policy. It is no bar to its use for the purpose of showing fraud in the policy's procurement. This is so because its use for the latter purpose does not amount to making it part of the agreement nor to using it for the purpose of contradicting the terms of the agreement. One seeking to void an agreement for fraud is not limited, in proving such fraud, to the provisions of the agreement itself. In showing fraudulent misrepresentations not contained in the agreement procured thereby, one does not add to the agreement in violation of the statutory or policy provision that the policy constitutes the entire agreement. *Plate* v. *Detroit Fidelity & Surety Co.*, 229 Mich 482. The application should have been received into evidence as offered.

Holding as we do, for the above reasons, that the trial and circuit courts erred in ruling the application inadmissible, the next question arises as to the relief to which this entitles defendant. CL 1948, § 522.17 (Stat Ann 1943 Rev § 24.280), applicable hereto, provided:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Plaintiff says that if the application be held admissible she would be entitled to go to the jury on the question of whether the answers were false and "made with actual intent to deceive," citing *Turner v. Mutual Benefit Health & Accident Association,* 316 Mich 6, which held to that effect. Defendant says, however, that the falsity of the answers in decedent's application was uncontradicted and admitted by plaintiff herself in exhibits in evidence and, further, that, the statute being in the alternative, even though the answers were not made with intent to deceive, the falsity will bar the right to recover if it materially affected either the acceptance of the risk or the hazard assumed by the insurer. Defendant then cites *General American Life Insurance Co. v. Wojciechowski,* 314 Mich 275, and cases therein cited for the proposition that "false answers relative to being in good health and being treated by doctors bear a direct relation to acceptance of the risk" and that, therefore, defendant is entitled to judgment as a matter of law. With this we do not agree under the facts in this case. We refer particularly to the facts attending the making of the application, plaintiff's decedent having signed it but defendant's agent apparently having inserted the answers. We think there is a jury question as to whether decedent made false answers in a material respect. This view is in keeping with the meaning of *Turner,* even though the proofs so far adduced do not bring that particular aspect of this case entirely within the factual situation in that case. This is reason enough to affirm the circuit court order remanding for new trial.

Is the testimony as offered concerning autopsy findings privileged in this case? The statute reads:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which in-

formation was necessary to enable him to prescribe. for such patient as physician, or to do any act for him as a surgeon." CL 1948, § 617.62 (Stat Ann § 27.911).

In holding the testimony privileged under this statute, the lower court relied, as does plaintiff, on *Thomas* v. *Township of Byron,* 168 Mich 593 (38 LRA NS 1186, Ann Cas 1913C, 686). Defendant says that a post-morten examination does not come within the language of the statute because its performance does not constitute "attending any patient" and the information derived therefrom is not acquired as being necessary to enable the doctor to prescribe for or to do any act for such patient. Defendant distinguishes this case from *Thomas* on the grounds that here plaintiff widow gave consent to performance of the autopsy, which the surviving husband refused in *Thomas,* and that here the doctor performing the autopsy testified that he had never seen decedent in his lifetime, while in *Thomas* the doctor who performed the autopsy had been decedent's attending physician immediately preceding and until time of death. The court below noted, however, that the death certificate in this case was prepared by the doctor who performed the autopsy and that it contained the statement that he had attended decedent as physician during the 12 days immediately preceding his death. Furthermore, the doctor testified that his conclusions and opinion as to the cause of death and other pertinent matters which defendant sought to have introduced into evidence were based not only on the findings of the autopsy, but also on available records made in connection with decedent's treatment before death which were, of course, privileged under the statute. Despite the absence in *Thomas* of the consent to the autopsy present in this case, which in nowise waives the privilege, we think that under the meaning of that case the

medical opinion and information derived in this case from the combined sources of autopsy and treatment by an attending physician must be held privileged and inadmissible.

Having held defendant entitled to a new trial for the reason first above considered, plaintiff cannot prevail on her cross appeal from the circuit court order for a new trial. Nevertheless, we shall consider briefly the points she raises on cross appeal because decision thereon may prevent on new trial recurrence of what the circuit court properly held to be errors on the first.

The trial court excluded from evidence decedent's written application to another insurance company made in May, 1952. Defendant offered it to show the falsity of answers in the application decedent made to defendant respecting his health, hospitalization and illness materially affecting the acceptance of the risk or hazard assumed. It was excluded on the ground that decedent was not a party to this suit and plaintiff could not be bound by his admissions against interest. This was error. *Gilchrist v. Mystic Workers of the World,* 188 Mich 466 (Ann Cas 1918C, 757).

After defining the term "sound health," made by the policy a condition precedent to its becoming effective, the trial court instructed the jury with respect to that term that the terms of a life insurance policy are to be construed against the insurer. There was no occasion for construction of the term after the court had already instructed the jury properly that sound health means that insured was free from disease which would seriously affect the soundness of his system and has not had a serious ailment. There was nothing about the term "sound health" to be construed either against or for defendant. Such instruction could only serve to confuse the jury and should not be given on retrial.

The trial court erred in instructing the jury, in effect, that decedent's misrepresentation of his age to defendant is not evidence of fraud upon which defendant may rely in its claim that the policy was procured through fraud. It is relevant to the question whether decedent intended to deceive defendant and made false representations affecting his acceptability as an insurance risk.

The trial court instructed the jury to the effect that it was necessary for defendant to prove that decedent died from causes directly attributable to his pleurisy condition. This was error. Proofs of the pre-existence of that condition bore on one of the controlling questions, namely, whether decedent was in sound health when the policy issued. To prove that he was not, it was not incumbent upon defendant to show that he later died of that condition. See *Western & Southern Life Insurance Co.* v. *Ogrodnik,* 290 Mich 254.

The court gave instructions, confusing at best, as to which party had the burden of proof with respect to the question of whether decedent was or was not in sound health when the policy issued. After defendant had adduced proofs of decedent's hospitalization, surgery and draining chest wall, the burden then rested on plaintiff to show that all this related to an ailment which did not tend seriously to weaken or undermine his health. *Wohlfeil* v. *Bankers Life Co.,* 296 Mich 310; *Bullock* v. *Mutual Life Insurance Co.,* 166 Mich 240.

Order remanding for new trial affirmed. No costs, neither party having prevailed in full.

CARR, KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.