PEOPLE v STRONG

Docket No. 60054. Decided December 29, 1978. On application by
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the defendant's conviction of
first-degree murder and remanded for further proceedings.
Rehearing denied 406 Mich 1103.

Landie Strong was convicted by a jury in Recorder's Court of
Detroit, Clarence Laster, J., of first-degree murder in the course
of an armed robbery and of armed robbery. The defendant's
theory of the case was that another suspect, Charles Edwards,
had actually committed the offenses and that Edwards' wife
and her sister had implicated the defendant, under a grant of
immunity, in order to protect Edwards. The trial court ruled
that a witness, Dana Nixon, who was five years old, was not
competent to testify and that he would not allow any questions
on whether Dana Nixon had failed to identify Edwards in a
lineup. The prosecutor, however, asked the police officer who
arrested Edwards if he placed Edwards in a lineup for "the
witness, Dana Nixon". The trial court sustained the defendant's
objection and gave the jury a cautionary instruction in the
matter. In his argument to the jury the prosecutor again
referred to the lineup "for a little girl, Dana Nixon" as the
reason that Edwards was never charged with the crime. The
Court of Appeals, Beasley, P.J., and J. H. Gillis, J. (N. J. Kauf-
man, J., concurring in result only), reversed the conviction of
the underlying felony of armed robbery and affirmed the con-
viction of first-degree murder in an unpublished per curiam
opinion (Docket No. 26530). Defendant applies for leave to
appeal. *Held:*

Despite the cautionary instruction, incompetent evidence
which negated the defense was placed before the jury and later
argued to the jury by the prosecutor. The jury was left with the
clear implication that Dana Nixon could not identify Edwards.
The prosecutor's question resulted in ineradicable prejudice,
and was asked and answered before the court could intervene;
his argument reiterated the prejudice. In such a case any

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 58 Am Jur 2d, New Trial §§ 125-128.
　75 Am Jur 2d, Trial § 127.

attempt by the court to remove the damage is futile. The deliberate insertion by counsel of incompetent prejudicial evidence is cause for reversal despite a curative instruction where the instruction is not likely to be effective. The defendant's theory of the case—that Edwards committed the crimes charged—was seriously undermined by the prosecutor's reference to the lineup held for Dana Nixon. The instruction given by the court would not dissipate the prejudicial effect of the inadmissible evidence in the jurors' minds.

The defendant's conviction of first-degree murder is reversed and the case is remanded to Recorder's Court of Detroit for further proceedings.

Justice Ryan, with Justices Coleman and Fitzgerald concurring, would affirm the defendant's conviction. The trial judge stated three times in a somewhat ambiguous ruling that it was the *result* of the lineup which should not be disclosed to the jury. There is no evidence that the prosecuting attorney deliberately disobeyed the trial judge's ruling concerning the lineup which was conducted for Dana Nixon. Rather, the prosecuting attorney was attempting, in good faith, to comply with his understanding of the trial judge's ruling and the question posed was not unfairly prejudicial to the defendant. The trial judge did not appear to have perceived any violation of his order, did not sustain defense counsel's objection when the trial resumed, and did not reprimand the prosecuting attorney.

### Opinion of the Court

1. Criminal Law — Evidence — Prejudice.

    Deliberate insertion of incompetent prejudicial evidence into a case is cause for reversal; even though the trial court gives the jury a curative instruction on the matter, a reviewing court will reverse where the instruction is not likely to be effective.

2. Criminal Law — Evidence — Prejudice.

    A defendant's conviction is reversed where the defendant's theory of the case, that another person had committed the crime, was seriously undermined by the prosecutor's references to evidence which the court had previously ruled inadmissible and a curative instruction given to the jury on the matter would not dissipate the prejudicial effect of the inadmissible evidence in the jurors' minds.

### Dissenting Opinion by Ryan, J.

3. Criminal Law — Evidence — Prejudice.

    *A defendant's conviction should not be reversed on the ground*

*that the prosecuting attorney disobeyed the trial judge's instructions concerning evidence of a lineup which was conducted for a witness who was later found by the trial court to be incompetent to testify where the record shows that the prosecuting attorney was attempting, in good faith, to comply with his understanding of the trial court's ruling concerning the lineup; the trial judge three times stated that he intended to exclude the results of the lineup from evidence; the question which the prosecutor posed concerning the lineup was not unfairly prejudicial to the defendant; and the trial judge did not appear to have perceived any violation of his order, did not sustain defense counsel's objection to the question, and did not reprimand the prosecutor.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offenders Bureau, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*George C. Edwards, III,* for defendant.

PER CURIAM. We are presented with prosecutorial misconduct, in the form of eliciting evidence which the trial judge had already ruled inadmissible. Because the prosecutor's misconduct eviscerated the defense theory we must reverse the defendant's conviction.

I

Midday on March 25, 1975, Allard Shelton was in his Detroit market with five-year-old Dana Nixon. He was killed during the course of a robbery. In a complaint filed April 16, 1975, defendant was charged with felony murder and armed robbery.

The police investigation had initially focused on Charles Edwards. His wife then came forward and,

with a grant of immunity, implicated the defendant and her sister, Carol Sims. She testified that the three of them went to the market on March 25 with the intention to rob it. She waited outside while the defendant and Sims entered. She heard a shot, and the defendant and Sims came out with money and cigarettes.

Carol Sims testified against the defendant also. The fact that she had been allowed to plead guilty to manslaughter and was promised a sentencing concession was brought to the jury's attention. She corroborated Mrs. Edwards' version of the transaction and said that the defendant took the victim into a backroom after robbing him at gunpoint.

The defense theory was that Edwards actually committed the offense and that the two sisters lied to protect Edwards. The jury convicted the defendant of both charges, and the trial judge imposed two life sentences. On June 21, 1977, the Court of Appeals affirmed defendant's conviction of felony murder, but reversed the armed robbery conviction because it was the same armed robbery on which the felony murder conviction was based.

## II

Before trial, the judge ruled that Dana Nixon was not a competent witness. Dana had been at the scene of the crime and had viewed a lineup which included Edwards and did not identify him. The record shows that after Sergeant Newcomb, the investigating officer, had stated that a lineup including Edwards had been held, defendant objected when Newcomb was asked to identify the witness for whom the lineup was held. Out of the presence of the jury, the prosecutor made an offer of proof which included the fact that Dana could make no identification at the lineup. Defense coun-

sel objected and commented "you [the judge] are going to say she is incompetent to testify, which I agree with. But, yet [the prosecutor], the way he's coming by innuendo and says, well, she couldn't identify Charles Edwards". The judge responded, "I will restrict that and eliminate it. *I won't allow the question about who the show-up was conducted for". (Emphasis supplied.)*

It is clear that the judge had precluded any question directly or indirectly on whether Dana Nixon identified Edwards. In response to the prosecutor's inquiry, the judge specifically instructed him as to what he could ask the witness, "Yes, that you had a show-up which has been answered. You can ask him whether or not the defendant, Charles Edwards, was charged with this offense and permitted to ask him whether or not he released him and told him to bring his wife down".

Despite this clear warning, after the weekend recess, the prosecutor placed before the jury the fact that a lineup which included Charles Edwards had been held for Dana Nixon. The examination was as follows:

"*Q.* What date did you arrest Charles Edwards?
"*A.* 4/4/75.
"*Q.* April 4, 1975. Did you interrogate him in connection with this particular case?
"*A.* Yes, sir, I did.
"*Q.* Did you investigate him?
"*A.* Yes, sir.
"*Q.* Did you place him in a lineup for the witness, Dana Nixon?
"*A.* Yes, sir."

Defense counsel immediately objected. The prosecutor replied by twice stating in the presence of the jury his understanding that the judge had only

ordered him not to reveal the results of the lineup. The judge sustained the objection and commented, "I didn't intend for any results of any lineup that was held for Dana Nixon to be given to the jury by inference". The court then went on to instruct the jury that Dana Nixon was incompetent to testify and that the jury should not rely "upon some incompetent testimony or actions".

The prosecutor nevertheless chose to comment on the objected-to testimony in closing argument:

"Sergeant Newcomb testified he was the officer in charge of the case going to the scene, arresting Charles Edwards on April 4, 1975, and interrogating him, further investigating him, a lineup was held for a little girl, Dana Nixon, and as a result of his investigation, Mr. Edwards was released, never charged in this particular matter."

### III

Despite the midtrial instruction, the fact remains that incompetent evidence, negating defendant's defense, was placed before the jury and later argued to the jury by the prosecutor. The jury was thereby left with the clear implication that Dana Nixon could not identify Edwards.

The prosecutor, despite careful warning by the trial judge and repeated objection by defense counsel, placed before the jury, in the form of a question and later in argument, incompetent, damaging evidence. His question resulted in ineradicable prejudice, and was asked and answered before the court could intervene. His argument reiterated the prejudice. In such a case any attempt by the court to remove the damage is futile, "for here the effective control is for the examining counsel and

not for the judge". *Paul v Drown,* 108 Vt 458, 462; 189 A 144; 109 ALR 1085 (1937).

The prosecutor's conduct violated professional standards. The ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function (Approved Draft, 1971), § 5.6(b), states:

"It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury."

See, also, Code of Professional Responsibility and Canons, DR 7-106(C).

Counsel's deliberate insertion of incompetent prejudicial evidence into a case is cause for reversal. *Pettersch v Grand Rapids Gas Light Co,* 245 Mich 277, 284-285; 222 NW 123, 126 (1928). Regardless of the means by which improper evidence is placed before the jury, a reviewing court will reverse despite curative instruction when the instruction is not likely to be effective. *Scripps v Reilly,* 38 Mich 10, 15 (1878); *Thomas v Byron Twp,* 168 Mich 593; 134 NW 1021 (1912).

Defendant's theory—that Charles Edwards committed the crime—was seriously undermined by the prosecutor's reference to the lineup held for Dana Nixon. The trial court's instruction concerning the reference to the lineup would not, in our judgment, dissipate the prejudicial effect of the inadmissible evidence in the jurors' minds.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the defendant's conviction of first-degree murder and remand the

case to Recorder's Court for the City of Detroit for further proceedings consistent with this opinion.

KAVANAGH, C.J., and WILLIAMS, LEVIN, and BLAIR MOODY, JR., JJ., concurred.

RYAN, J. *(to affirm).* I respectfully dissent from the opinion for reversal of the defendant's murder conviction.

A close reading and careful analysis of the trial transcript satisfies me that there is no evidence that the prosecuting attorney deliberately disobeyed the trial judge's instructions concerning the lineup which was conducted for a witness, Dana Nixon, who was later found by the trial court to be incompetent. Rather, my reading of the transcript leads me to conclude that the prosecuting attorney was attempting, in good faith, to comply with his understanding of the trial judge's instructions concerning the lineup, and the question posed was not unfairly prejudicial to defendant.

I

During the course of defendant's trial, on Friday morning, September 26, 1975, the prosecutor questioned Sergeant Newcomb, one of the investigating officers, concerning the arrest of Charles Edwards and a lineup that was subsequently conducted involving Edwards.

The defense objected to this testimony on the ground that the prosecution was " * * * going to talk about the *results* of some kind of show-up". (Emphasis supplied.)

The trial court responded that " * * * if he does attempt to, you can object again. You know when to object, and I will rule on that".

The prosecutor resumed his examination of Newcomb and asked whether any witnesses who had been connected with the case were called down to the "show-up". The defense objected. In the course of the ensuing discussion, the trial judge excused the jury.

The following colloquy is quoted at some length because it strongly suggests the good faith of the prosecutor's subsequent questions based on his understanding, or misunderstanding, of the court's ruling. It should be remembered that the trial judge had earlier ruled that five-year-old Dana Nixon was not a competent witness.

"*The Court:* What questions do you intend to ask?

"*[The prosecutor]:* I intend to ask him, he testified he interviewed him, whether a show-up was held for Dana, and Dana could make no identification. Then, further, what he told Charles Edwards, and that was to bring in Patricia Edwards and later on getting into Patricia Edwards, he released Charles Edwards after his investigation on April 4, 1975, and he was never charged in connection with this case.

\* \* \*

"*Mr. Moore [defense counsel]:* I get the feeling the court is about to rule with the prosecution, why is it?

"*The Court:* I am about to rule.

"*Mr. Moore:* Favorable to the prosecution?

"*The Court:* I don't know if it's favorable or not. It could be favorable to the defendant. I am not concerned who it is favorable to. He said he conducted a show-up with the witness, Dana Nixon, and she could not identify this man, your defendant.

"*Mr. Moore:* She could not identify Charles Edwards. Wasn't there—Dana Nixon couldn't identify anybody. You are going to say she is incompetent to testify, which I agree with. But, yet Mr. [Prosecutor], the way he's coming by innuendo and says, well, she couldn't identify Charles Edwards.

"*The Court:* I will restrict that and eliminate it. I

won't allow the question about who the show-up was
conducted for.

"*Mr. Moore:* The prosecutor already had to say—you
let him say the show-up was conducted. That's already
said and allowed.

"*[The prosecutor]:* In other words, I am not permitted
to *go into the results?*

"*The Court:* That's what I'm saying, especially *from*
Dana Nixon, because, she's incompetent.

*   *   *

"*Mr. Moore:* The court has the right to say look, I'm
going to allow you to say—ask whether or not the man
was and was not charged in this matter, and that and
that alone. If the court—it must without getting into a
lot of other did you talk to him after talking investi-
gate, then, et cetera, did you release him. That suggests
more.

"*The Court:* Let me ask if that's what the prosecutor
wants to do.

"*[The prosecutor]:* Your Honor, I had intended to ask
whether he arrested Charles Edwards, whether he in-
terrogated him, whether after interrogating whether or
not he released him or charged him, what he told
Charles Edwards at the time of the release, whether or
not a show-up was conducted and whether or not any
identification was made, and by whom, and I made an
offer of proof that Dana Nixon did attend the show-up
wherein Charles Edwards was in there and *could make
no identification.* You have ruled, I cannot go into what
*the results* of it were.

"*The Court:* Dana—

"*[The prosecutor]:* The lineup, the show-up.

"*The Court:* Right.

"*[The prosecutor]:* However, may I be permitted to go
into the other part of the offer of proof?

"*The Court:* Yes, that you had a show-up which has
been answered. That you can ask him whether or not
the defendant, Charles Edwards, was charged with this
offense and permitted to ask him whether or not he
released him and told him to bring his wife down.

"*[The prosecutor]:* That's what I intend to do.

*"Mr. Moore:* I object, your Honor, I think it's hearsay, detrimental and improper examination.

*"The Court:* It is not hearsay." (Emphasis supplied.)

A fair reading of this exchange makes it clear that the trial judge said he would "restrict and eliminate" any statement by Sergeant Newcomb, either directly or by innuendo, that Dana Nixon could not identify Edwards after viewing the lineup. The judge further stated he would not "allow the question about who the show-up was conducted for".

Apparently confused by this somewhat ambiguous ruling, the prosecutor twice attempted to clarify his understanding that he was being precluded from inquiry into the *results* of the lineup, and twice the judge stated that was his ruling.

At the conclusion of this discussion, shortly after noon, the jurors returned and were instructed that they were excused until Monday morning.

Two and one half days later, on Monday, September 29, 1975, the trial resumed and the following occurred:

*"By [the prosecutor]:*
*"Q.* Sergeant Newcomb, when we adjourned Friday, I believe I was questioning you about arresting Charles Edwards, isn't that correct?
*"A.* Yes.
*"Q.* What date did you arrest Charles Edwards?
*"A.* 4-4-75.
*"Q.* April 4, 1975. Did you interrogate him in connection with this particular case?
*"A.* Yes, sir, I did.
*"Q.* Did you further investigate him?
*"A.* Yes, sir.
*"Q.* Did you place him in a lineup for the witness, Dana Nixon?

"*A.* Yes, sir.

"*Mr. Moore [defense counsel]:* Your Honor, I'm going to object. This court specifically ruled that Dana Nixon was incompetent to testify in this case. Friday, we went over this and over this and the one thing the court indicated he should not say, Dana Nixon, he placed him in a lineup relative to Dana Nixon. I don't know why— if the court—if the witness is incompetent in the court —to testify as the court ruled relative to that little girl, everything she did was incompetent. I think the prosecutor knows that and it was agreed Friday he wouldn't say that.

"*[The prosecutor]:* My understanding of the ruling was I would be entitled to ask Sergeant Newcomb whether a lineup was held and *not the results.*

"*Mr. Moore:* The court specifically stated that you were not supposed to talk about that little girl. She is incompetent, and we don't have any way of cross-examining her relative to that. I defined it on the record, your Honor, that was the specific directions of the court. It was you could ask whether or not he was put in a lineup, but you couldn't talk about Dana Nixon.

"*[The prosecutor]:* My understanding of the ruling was I couldn't get into *the results,* but I could question if a lineup was held where Mr. Edwards was in the lineup for Dana Nixon, the five-year-old girl.

"*The Court:* For the purpose of clarification, *I didn't intend for any results of any lineup* that was held for Dana Nixon to be given to the jury by inference. That's not to mention the fact that a lineup was held, no harm done in saying a lineup was held, *but don't go any further.*

"*[The prosecutor]:* All right.

"*The Court:* Let me say this, the reason why the court is saying that, the testimony of Dana Nixon is not competent, you cannot hear it. Because, under the laws of this state, any witness, 10 years or younger, the court must examine that witness to determine whether or not the witness is competent to be a witness, and that they know what it is to tell the truth and understand what the proceedings are, and just know what she or he might be talking about. I did examine this witness

outside of your presence. I'm satisfied she is incompetent, she doesn't know what to say, she doesn't know the difference between the truth or a lie. Therefore, her testimony would be of no value to you, and I ruled that and that is my responsibility. That is what I have determined, that she is not competent to testify, therefore, anything she did or said, you cannot hear that. You cannot base your opinion upon some incompetent testimony or actions; do you understand that?" (Emphasis supplied.)

It is thus evident that having twice obtained the judge's answer that it was the *results* of the lineup which should not be disclosed, the prosecutor believed that to be the court's ruling and did not question Newcomb about those results. The judge himself, in the foregoing discussion, stated for the third time that he intended to exclude the *results* of the lineup.

Thus, while the trial judge did initially instruct the prosecutor not to mention that the lineup was held for Dana Nixon, and the prosecutor nonetheless did so, the context in which this occurred is important. The questioning followed a manifestly good faith effort on the part of the prosecutor to correctly understand the ruling, two statements by the trial judge that it was the *results* of the lineup that he wanted to keep from the jury, and a two-and-a-half-day interruption in the trial.

The characterization, in the opinion to reverse, of the prosecutor's questions as a " * * * deliberate insertion of incompetent prejudicial evidence * * * " and as " * * * violat[ing] professional standards * * * " must have been made upon an inadequate examination of the record or focusing on portions of the record taken out of context. The trial judge does not appear to have perceived any violation of his order, did not sustain defense

counsel's objection on Monday morning, and did not reprimand the prosecutor.

More importantly, the reference to Dana Nixon was simply not prejudically unfair to defendant and does not warrant nullifying the murder conviction.

COLEMAN and FITZGERALD, JJ., concurred with RYAN, J.